J. V. (Pete) WILLIAMS d/b/a
Totem Inn, Appellant,

v.

CITY OF VALDEZ, Appellee.

CITY OF VALDEZ, Cross-Appellant,

v.

J. V. (Pete) WILLIAMS, d/b/a Totem
Inn, Cross-Appellee.

Nos. 3709, 4149.

Supreme Court of Alaska.

Nov. 16, 1979.

Albert Maffei, Anchorage, for appellant-cross-appellee.

Kenneth P. Jacobus, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee-cross-appellant.

OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

RABINOWITZ, Chief Justice.

After the 1964 earthquake, the City of Valdez obtained assistance from the United States Army Corps of Engineers in its efforts to relocate and rebuild. As a part of this rebuilding project the Corps built a storm drainage ditch across a parcel of land in United States Survey 635. This portion of the ditch was constructed from August 4, 1965, through August 18, 1965, and, as a part of the overall project, was operational on December 1, 1965. The ditch was to be the principal conduit for storm sewer discharge from the City into the port of Valdez.

At the time the ditch was constructed the parcel of land in question was owned by the Port Valdez Company. In 1971, the Port Valdez Company filed a complaint against the City seeking relief for various allegedly unlawful acts.[1] In a portion of this complaint, the Company alleged that in 1965 the City unlawfully excavated the drainage ditch, blocking development and use of this parcel of land. The Company sought a remedy of ejectment, damages and restoration of the property. On August 14, 1974, the City and Company entered into a settlement agreement resolving this dispute in its entirety. In this agreement the Company waived "any objection it might have to the ditch being there and to any claim to damages relating to the ditch."

Prior to this settlement, on May 24, 1973, the Company conveyed a 1.39 acre parcel of land which the ditch traversed to J. V. Williams by quitclaim deed.[2] Williams, at approximately the same time, also purchased an adjoining 4.158 acre parcel from the Company by warranty deed. It was on this latter, adjoining parcel that the Totem Inn motel, restaurant, and bar facilities had been constructed by Williams in 1972 and completed in early 1973. Williams knew that the drainage ditch existed at the time of these purchases, and was also aware of the pre-existing controversy and law suit between the City and the Company with respect to the ditch. In fact, his affidavit in the superior court in this case stated that "the property was purchased in two separate parcels separating that portion which contained the ditch from the remainder of the property so that no legal dispute existed on the parcel on which [he had] constructed [the Totem Inn facilities]."

At some time between May 20 and June 1, 1973, approximately the time of his purchase of the property, Williams filled in a portion of the ditch for the purpose of constructing access and additional parking space for the Totem Inn, apparently after some discussion with the City on the matter.[3] Shortly thereafter, the City filed a complaint for a mandatory injunction and damages for the cost of removing this obstruction to Valdez' storm drainage system. While the request for a restraining order requiring the immediate reopening of the ditch was denied, the superior court concluded that the City could reopen the ditch pursuant to its general police powers.

Instead of clearing out the entire length of the filled ditch, the City, evidently as a temporary measure until the merits of the suit were decided, cleared only a portion of the ditch on Williams' property. This allowed any drainage water to bypass the filled portion of the ditch and flow instead along the highway right-of-way.[4] This did

1. Among the numerous other sources of contention were disputes over taxation of various properties owned by the Company, disputes as to other uses of the Company's land by the City, disputes over the effect of the conveyance of certain properties from the Company to the City, and disputes as to other actions taken by the City which affected the Company's properties.

2. The record indicates that the full purchase price for this parcel was $7,000.

3. Williams filled in approximately 400 feet of the ditch. Williams stated that he had attempted to negotiate with the City to have them either remove the ditch or place a pipe into it and then cover it. He also alleged that he offered to install the pipe at his own expense if the City would give him a tax credit in future years for the cost of installation.

4. The City explains that this was done to reduce costs and to allow Williams the benefit of a larger area for the Totem Inn parking lot. Williams apparently agreed with the City as to this interim solution.

not resolve the dispute, however, since the State Highway Department objected to this use of its right-of-way.

Accordingly, on January 4, 1974, the City filed an amended complaint requesting relief directing Williams to remove the obstruction to the ditch at his cost, as well as other relief and damages, including the City's expenses for the initial partial clearing of the ditch. Williams answered and counterclaimed, requesting a declaration that the ditch was unlawfully constructed on his property by the City and seeking damages for the cost of filling in the remainder of the ditch. The City then moved for summary judgment on its claim, but this motion was denied by the superior court.[5]

Approximately a year later, a second motion for summary judgment was filed by the City. The superior court also denied this second summary judgment motion by the City.[6]

Subsequently, the City again moved for summary judgment, terming its motion one for "partial summary judgment." The motion sought a declaration that inverse condemnation had occurred in 1965 when the Corps of Engineers constructed the drainage ditch on behalf of the City of Valdez. It purported not to deal with the amount of inverse condemnation damages, to whom such damages should be paid, or the City's claim for damages resulting from Williams' blockage of the drainage ditch.

Williams submitted a memorandum and affidavit in opposition to this motion, which argued that summary judgment was not proper, in part because there were genuine issues of fact as to:

1. The exact location of the present drainage ditch.

2. Whether or not the Court should limit the use where the ditch is presently existing; that is, should the Court require the plaintiff [to] utilize the ditch in the same manner that it is utilizing the same throughout the CITY OF VALDEZ; that is, by laying a pipe and covering the same.

At a decisional hearing, the superior court granted the City's motion for summary judgment, basing its decision on *Wickwire v. City and Borough of Juneau,* 557 P.2d 783 (Alaska 1976). The superior court held that the date of the initial invasion by the Corps was the proper valuation date for computing any claim to inverse condemnation damages. The City's counsel then asserted, as an addition to its motion, that, therefore, the Port Valdez Company rather than Williams had a claim for such damages. The superior court, relying on the *Wickwire* decision, agreed that "it was not a right that can be passed by a quitclaim deed, and consequently Mr. Williams has no right to any compensation."[7]

---

5. The City's motion was "based on the simplest and most complete ground possible—rights reserved of record." The original land patent "reserved from the lands hereby granted, a right of way thereon for ditches or canals constructed by the authority of the United States." The City alleged that the construction of the ditch by the Corps of Engineers was therefore pursuant to the authority of the United States. However, the agreements between the City and the federal government expressly state that it was the responsibility of the City to "provide without cost to the United States all lands, easements, and rights-of-way necessary for accomplishment of the approved work." Williams argued that the Corps was thus operating under the authority of the City and, further, that the reservation of rights to the United States in the original patent was not valid after statehood.

6. This second motion by the City was based on several theories in addition to the claim of reserved rights. See note 5 *supra.* The City argued that any claim could only be asserted by the owner at the time of ditch construction, the Port of Valdez Company, and that that claim had been settled. The City also claimed that it had acquired title to the disputed property by adverse possession.

7. In *Wickwire v. City and Borough of Juneau,* 557 P.2d 783, 785 (Alaska 1976) (footnotes omitted) we recognized this general principle in the context of inverse condemnation:

[T]he right to recover damages for condemnation is not an interest in real property which passes to the grantee under a quitclaim deed. That right remains with the owner of the property at the time of the taking.

See 2 J. Sackman, Nichols on Eminent Domain § 5.21 (1978).

An order granting partial summary judgment, which the City had submitted with its motion prior to the decisional hearing, was subsequently entered, and Williams filed a notice of appeal from this order on October 3, 1977.

On October 11, 1977, the City filed a motion for amendment of that order and entry of final judgment on the grounds that the order, prepared prior to the decisional hearing, did not reflect the broader decision rendered at the hearing by the judge. On January 19, 1978, the superior court vacated its earlier order and entered judgment in favor of the City of Valdez, stating that he had "reconsidered the entire case file and previous actions taken in it as well as the objections" raised by Williams to the entry of a final judgment. This judgment held that the City acquired a fee simple interest in the property on which the drainage ditch had been constructed as of the date of the taking, August 4, 1965; permanently restrained Williams from interfering with the drainage ditch; required Williams to pay the cost of clearing the original blockage and of restoring the ditch to its original condition, while retaining jurisdiction to resolve any disputes as to this restoration. Williams filed an amended notice of appeal and statement of points on appeal in response to the trial court's entry of this judgment.

The City subsequently filed a motion for attorney's fees, arguing that the award was "appropriate under the particular facts and circumstances of this case." The superior court entered an order denying the City an award of attorney's fees, because of its conclusion that the case "should be treated as one for condemnation" and that the City, as the condemning authority, was therefore not entitled to recover its attorney's fees. The City brings a cross-appeal from this order.

Williams argues on appeal that the superior court did not have the authority to modify its "partial summary judgment" order and enter a final judgment after the filing of Williams' notice of appeal from that earlier order.[8] We find this argument to be without merit because Williams' initial "appeal" was not taken from an appealable "final judgment" as required by Alaska Appellate Rule 5.[9]

As a general rule, a partial summary judgment order is considered "interlocutory" and non-appealable unless there is a specific statutory provision providing for appeal.[10] However, in order to assess finality "the reviewing court should look to the substance and effect, rather than form, of the rendering court's judgment, and focus primarily on the operational or 'decretal' language therein." "The basic thrust of the finality requirement is that the judgment must be one which disposes of the entire case, '. . . one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[11]

8. Alaska R.App.P. 6 provides, in part, that
   [t]he supervision and control of the proceedings on appeal shall be in the supreme court from the time the notice of appeal is filed with its clerk, except as otherwise provided in these rules.

9. Alaska R.App.P. 5 provides:
   *Judgments From Which Appeal May Be Taken.*
   An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof in any action or proceeding, civil or criminal, except that the state shall have a right to appeal in criminal cases only to test the sufficiency of the indictment or on the ground that the sentence is too lenient.

For a discussion of the policies underlying the finality rule, see *Johnson v. State,* 577 P.2d 706 (Alaska 1978), and for a historical discussion of the concept of finality, see Crick, *The Final Judgment as a Basis for Appeal,* 41 Yale L.J. 539 (1932).

10. *See* 6 Moore's Federal Practice §§ 56.20, 56.21 (1976 and 1978–79 Supp.). Williams does not argue that there is any statutory authority for an appeal of right from an interlocutory partial summary judgment order in this case.

11. *Greater Anchorage Area Borough v. City of Anchorage,* 504 P.2d 1027, 1030–31 (Alaska 1972) (footnotes omitted). *See also Johnson v. State,* 577 P.2d 706, 709 (Alaska 1978); *P. H. v. State,* 504 P.2d 837, 839 n.1 (Alaska 1972) (or-

The "partial summary judgment" order of August 29, 1977, entered in this case was not a "final judgment" which disposed of the entire case on its merits. The order was limited to the legal issue of inverse condemnation and, like the City's partial summary judgment motion seeking the order, did not purport to resolve the issues of condemnation damages, to whom such damages should be paid, or the City's claim for damages resulting from Williams' blockage of the drainage ditch. A comparison of this order with the judgment entered January 19, 1978, emphasizes that several issues were not addressed or resolved by the order which required resolution in order to dispose of the entire case and end the litigation on the merits.[12] Since Williams' initial notice of appeal was taken from an order of the superior court which was not a final judgment, the superior court was not thereby divested of its authority to modify that order and enter a final judgment in the case.[13]

Williams also argues that the entry of a summary judgment was improper because there was a genuine issue of material fact as to whether the Port Valdez Company originally agreed or acquiesced to the construction of the ditch on its property.[14] The nature and duration of any such agreement would be relevant to a determination as to the fact and time of any "taking" by the City.

Williams did not raise this question in the superior court in his objections to the entry of a summary judgment or in his denomination of genuine issues of material fact. However, Alaska Civil Rule 56(c) provides only that the party opposing a motion for summary judgment "may serve opposing affidavits, a concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." It remains the responsibility of the trial judge to determine whether the record presents any factual issues which would preclude the entry of a summary judgment as a matter of law. Still, any such factual issues must have been fairly presented to the trial court, since, as a general rule, appellate review is precluded where "questions which appellants denominate as 'triable issues of fact' were not presented to the court below."[15]

---

der waiving juvenile jurisdiction is an appealable final order because it terminates further consideration in children's court and transfers the case to the superior court).

**12.** Alaska R.Civ.P. 56(c) and (d) contemplates the issuance of interlocutory summary judgments of this type. Civil Rule 56(c) specifically provides, in part:

A summary judgment, *interlocutory in character,* may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. [emphasis supplied]

This is, in effect, what the initial order here did. It decided the rights and legal liabilities between the parties, but did not reach or define the appropriate remedy due each party. Such an order is considered interlocutory and non-appealable in the absence of specific statutory provisions or extenuating facts, which are neither alleged nor present here. *See, e. g.,* 6 Moore's Federal Practice ¶ 56.20[4], at 56–1234 to 1235 (1979 & 1978–79 Supp.).

**13.** However, since Williams amended his notice of appeal to reflect the subsequent entry of a final judgment by the superior court on January 19, 1978, and the parties have addressed the issues raised by that judgment, we will treat this appeal as properly taken from that final judgment. *Cf. Alaska Nat'l Bank v. Linck,* 559 P.2d 1049, 1051 (Alaska 1977) (appeal technically premature, but scope of issues raised clear to parties; no injustice will result from treating appeal as properly taken from final judgment).

**14.** A summary judgment may only be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Alaska R.Civ.P. 56(c). *See, e. g., Alaska Rent-A-Car, Inc. v. Ford Motor Co.,* 526 P.2d 1136 (Alaska 1974).

**15.** *Von Brimer v. Whirlpool Corp.,* 536 F.2d 838, 848 (9th Cir. 1976). *See also DeBardeleben v. Cummings,* 453 F.2d 320 (5th Cir. 1972). This is consistent with the broader outline of review of trial court summary judgment determinations.

The appellate court can consider only those papers that were before the trial court. Thus, the parties cannot add exhibits, depositions, or affidavits to support their position nor can they advance new theories or raise new issues in order to secure a reversal of the lower court's determination.

The sole support in the record for Williams' assertion as to this "genuine issue of material fact" is an allegation in the City's amended complaint, as one of several alternative grounds for relief, that the Port Valdez Company allowed the ditch to be constructed "by agreement or acquiescence." However, at the decisional hearing the superior court observed, without objection from Williams, that "[t]he City is apparently abandoning any contention that it constructed the ditch rightfully or it subsequently obtained the right to maintain it."

Other than this allegation by the City, the record consistently indicates that there was no such agreement between the City and the Port Valdez Company. In his response to the City's complaint, Williams denied that his predecessors in interest had so agreed or acquiesced, and in an affidavit concerning his negotiations with the Port Valdez Company to purchase the property Williams stated:

It was my understanding that the ditch was constructed on the property without any legal authority whatsoever and that the CITY OF VALDEZ had no easement or valid right to enter the property, nor did the CITY OF VALDEZ acquire any right to construct the ditch on the subject property, or to maintain the same, and that it has been in dispute with the owner of said property since the ditch was constructed.[16]

The record before the superior court also included a complaint filed by the Port Valdez Company in the civil action against the City commenced more than a year and a half before Williams purchased the property in question, as well as an affidavit from the Company's attorney in these matters. These documents assert that the ditch was constructed on the property by the City "without the consent or authorization" of the Port Valdez Company and that the Company considered the ditch an illegal encroachment on its property which it had repeatedly sought to have removed.

■ It is well established that

[t]o avoid summary judgment once the moving party meets its burden, the nonmoving party must produce competent evidence showing that there are issues of material fact to be tried. The respondent must set forth specific facts showing that it could produce admissible evidence reasonably tending to dispute the movant's evidence or establish an affirmative defense.[17]

The respondent's burden can only be met by "competent evidence to show that there are issues of material fact to be tried," and "[a]ssertions of fact in [the] pleadings and memoranda are not admissible in evidence and cannot be relied upon for the purposes of summary judgment."[18] Such assertions in the City's complaint are Williams' only source of "evidence" in the record concerning the possibility of an agreement between

---

10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2716, at 435–36 (1973 & 1978 Supp.). *See also* 6 Moore's Federal Practice ¶ 56.27[1] (1979 & 1978–79 Supp.).

**16.** Similarly, in answer to one of a number of questions propounded to the parties by the superior court, Williams stated that he purchased the property "with the knowledge that his predecessor in title had considered the drainage ditch illegal and an encroachment upon the property under those circumstances with the knowledge that he would have to continue with the dispute, and that he took the property subject to the fact that he would have to continue with the controversy against the CITY, and, in fact, did so, and did continue with the controversy, and finally closed part of the ditch by filling it in."

**17.** *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Serv. Co.*, 584 P.2d 15, 24 (Alaska 1978) (citations omitted). *See also Champion Oil Co., Inc. v. Herbert*, 578 P.2d 961, 963 (Alaska 1978); *Jennings v. State*, 566 P.2d 1304, 1308–09 (Alaska 1977); *Brock v. Rogers & Babler, Inc.*, 536 P.2d 778, 782 (Alaska 1975); *Braund, Inc. v. White*, 486 P.2d 50, 54 n.5 (Alaska 1971).

**18.** *Brock v. Rogers & Babler, Inc.*, 536 P.2d 778, 782–83 (Alaska 1975) (footnotes omitted). *See also Jennings v. State*, 566 P.2d 1304, 1309–10 (Alaska 1977); *Braund, Inc. v. White*, 486 P.2d 50, 54 n.5 (Alaska 1971). *Cf. Alaska Airlines, Inc. v. Sweat*, 568 P.2d 916, 930 (Alaska 1977) (respondent "failed to point out any document indicating a material dispute on this issue"). *See generally* Alaska R.Civ.P. 56(e).

the Port Valdez Company and the City to allow construction of the ditch on what was then the Company's property. Those assertions are not sufficient in themselves to raise a genuine issue of fact, particularly where abandoned as a alternative theory of relief, and did not make the superior court's entry of a summary judgment improper.[19]

Williams also argues that the superior court erred in granting the City a fee simple interest in the property by inverse condemnation, rather than an easement by prescription. However, as the superior court noted at the decisional hearing, the City sufficiently established its authority to utilize condemnation to obtain the property for this purpose and Williams did not dispute the City's eminent domain power in this respect.[20] Given this power of eminent domain. *Wickwire v. City and Borough of Juneau,* 557 P.2d 783 (Alaska 1976), provides the answer to Williams' contention. In a context analogous to the present situation in all respects important to this question, *Wickwire* held that "[t]he landowner's only remedy in a situation such as the one presented is an inverse condemnation action for just compensation." [21]

However, while eminent domain is the source of the City's power and right to construct the drainage ditch, Williams also asserts that the superior court should not have granted the City a fee simple interest in the land on which the ditch was constructed. The City argues that our decision in *City of Fairbanks v. Metro,* 540 P.2d 1056

(Alaska 1975), recognized discretion in the condemnor to choose the estate to be taken. In that case, in the context of statutory condemnation proceedings, we recognized that the power of eminent domain is such that "particular questions as to the route, location or amount of property to be taken are to be left to the sound discretion of the condemning authority absent a showing by clear and convincing evidence that such determinations are the product of fraud, caprice, or arbitrariness." *Id.* at 1058. That opinion does not extend the City's discretion to the matter of the choice of the estate to be taken.

■ The nature and extent of the estate taken in the exercise of eminent domain power depends on the statute conferring that power.[22] At the time of the taking in this case as determined by the superior court, the relevant Alaska statute, AS 09.-55.250 provided:

*Classification of estates and lands subject to be taken.* The following is a classification of the estates and rights in lands subject to be taken for public use:

(1) a fee simple, when taken for public buildings or grounds, or for permanent buildings, for reservoirs and dams and permanent flooding occasioned by them, or for an outlet for a flow, or a place for the deposit of debris or tailings of a mine, or when, in the judgment of the Department of Public Works or the Department of Highways, a fee simple is necessary for any of the purposes for which the depart-

---

**19.** Particularly appropriate here is language in *Marks Music Corp. v. Continental Record Co.,* 222 F.2d 488, 492 (2d Cir.), *cert. denied,* 350 U.S. 861, 76 S.Ct. 101, 100 L.Ed. 764 (1955):

[A party] in his opposition to a motion for summary judgment cannot abandon an issue and then, after an unpalatable decision by the trial judge, on appeal, by drawing on the pleadings resurrect the abandoned issue.

Even on appeal, Williams refers to no competent evidence which he would produce to prove an agreement between the Company and the City, nor does he discuss the nature and extent of this alleged agreement or its effect on this litigation.

**20.** One of the questions which the judge posed in his order for further briefing after the City's second motion for summary judgment con-

cerned the City's eminent domain power over this property during the appropriate time periods. The City replied that it had such power since the "property has been located within the municipal boundaries at all times." Williams did not dispute the City's power in this respect. *See* AS 29.73.020 (eminent domain power of municipalities); AS 09.55.240 (permissible purposes for exercise of eminent domain power).

**21.** *Id.* at 784 (footnotes omitted). *See also State Dept. of Highways v. Crosby,* 410 P.2d 724, 728–29 (Alaska 1966).

**22.** 3 J. Sackman, Nichols on Eminent Domain § 9.2[1] (1978 & 1979 Supp.). *See, e. g., Carter v. State Dep't of Roads,* 198 Neb. 519, 254 N.W.2d 390 (1977).

ment, on behalf of the state, is authorized by law to acquire real property by condemnation;

(2) an easement when taken for any other use;

(3) the right of entry upon an occupation of lands, and the right to take from the land earth, gravel, stones, trees, and timber as may be necessary for a public use.[23]

Consistent with general principles of eminent domain, this statute specifies certain uses for which a fee simple taking is authorized and allows only an easement to be taken for any other use.[24]

█ It is the "general rule . . . that only such an estate in property sought to be acquired by eminent domain may be taken as is reasonably necessary for the accomplishment of the purpose" for which the property is taken.[25] Therefore, the principle that "statutes authorizing the exercise of eminent domain are to be strictly constructed against the condemnor . . . has been applied to statutory declarations with respect to the extent of the interest which is to be acquired."[26]

█ Pertinent to the drainage ditch for which the taking in this case occurred, the Alaska statute quoted above authorized a fee simple taking "for an outlet for a flow." While this phrase, in isolation, is sufficiently ambiguous to include the drainage ditch here, an examination of other eminent domain provisions and the principle of strict construction do not allow such an expansive reading.

█ The provisions of AS 09.55.240 enumerate the public uses for which the right of eminent domain may be exercised. The only portion of that statute which speaks in terms of "an outlet for a flow" is AS 09.55.-240(5), which authorizes the exercise of eminent domain power for:

roads, tunnels, ditches, flumes, pipes, and dumping places for working mines; also outlets, natural or otherwise, for the flow, deposit, or conduct of tailings or refuse matter from mines; also an occupancy in common by the owners or possessors of different mines of any place for the flow, deposit, or conduct of tailings or refuse matter from their several mines, and sites for reservoirs necessary for collecting and storing water . . . . .

This provision suggests that "an outlet for a flow" for which a fee simple taking is allowed refers only to the flow of tailings or refuse matter from mines. This narrow interpretation of this phrase is also consistent with its context in AS 09.55.250, allowing a fee simple taking "for an outlet for a flow, or a place for the deposit of debris or tailings of a mine."

We conclude that the City was authorized to take only an easement for this drainage ditch. This conclusion is in accord with the decisions of other courts in inverse condemnation cases which have found that an easement was taken for a drainage ditch or culvert.[27] Moreover, the record indicates that the City may replace the drainage ditch with a covered culvert to minimize the impact on Williams' business, in which case, even were a fee simple taking authorized by statute, an easement would be the most appropriate interest for the City to acquire.

█ On remand, the superior court should amend its judgment to designate the estate taken as an easement, rather than a fee simple interest. In so doing, the superi-

---

23. The Department of Natural Resources was added as a state agency empowered to determine the necessity of a fee simple taking for its state purposes in 1971. *See* ch. 130, § 8, SLA 1971.

24. "If an easement will satisfy public needs, to take the fee would be unjust to the owner, who is entitled to retain whatever the public needs do not require, and to the public, which should not be obliged to pay for more than it needs." 3 J. Sackman, Nichols on Eminent Domain § 9.2[2], at 9–17 to 9–18 (1978 & 1979 Supp.) (footnote omitted).

25. *Id.* § 9.2, at 9–6.

26. *Id.* § 9.2[1], at 9–15.

27. *See, e. g., Mehl v. People ex rel. Dep't of Public Works*, 13 Cal.3d 710, 119 Cal.Rptr. 625, 532 P.2d 489 (Cal.1975) (en banc); *Cereghino v. State*, 230 Or. 439, 370 P.2d 694 (1962).

or court should enter an order specifically describing the easement and any necessary right-of-way which has been taken by the City.[28] In amending its judgment, the superior court should also eliminate that portion of the judgment which purports to decide that the Port Valdez Company has no claim to compensation as owner of the property at the time of the taking, since the Company was not a party to the present case and its rights therefore could not be adjudicated by the superior court.[29] We have considered each of the other points raised by Williams on appeal and find them to be without merit, with the exception of two issues relating to the provisions of the superior court's judgment which awarded the City of Valdez the costs of clearing the original blockage, as well as the costs of restoration of the ditch to its original condition.[30] Our study of the parties' briefs has led us to the conclusion that further briefing of those questions is indicated. Thus, jurisdiction will be retained as to these two issues and further briefing will be ordered.

In the cross-appeal in this case, the City argues that the superior court erred in refusing to award the City attorney's fees. As noted above, the superior court awarded no attorney's fees to the City because of its view that the case "should be treated as one for condemnation."

Civil Rule 72(k) contains specific provisions for the award of attorney's fees to defendant landowners in eminent domain proceedings.[31] We have interpreted these

---

**28.** The statutory scheme outlining condemnation procedures provides in AS 09.55.370:

*Final order of condemnation.* When payments have been made and the bond given, if the plaintiff elects to give one as required by § 350 of this chapter, the court shall make a final order of condemnation, which shall describe the property condemned and the purposes of the condemnation. A copy of the order shall be filed in the office of the recording district where the land is located, at which time the property described in the order vests in the plaintiff for the purposes specified in the order.

While this is not a statutory procedure, we have previously held that statutory requirements should be followed, as far as practicable, as to issues unresolved by the fact of inverse condemnation. *See State Dep't of Highways v. Crosby*, 410 P.2d 724, 729 (Alaska 1966). In this case, the record reveals no finding of fact by the superior court describing the property condemned and therefore an order doing so is necessary. The court made no finding that the quitclaim deed in the record described the parcel taken, though the City's attorney stated that that parcel was comprised of the ditch and an appropriate right-of-way.

**29.** The record in this case contains a copy of the settlement entered into between the City and the Port Valdez Company, which includes a clause which says "[t]he Company waives any objection it might have to the ditch being there and to any claim for damages relating to the ditch." Based on this apparent waiver, the superior court's judgment included a provision which states:

The amount required to be paid by the City of Valdez is limited to the value as of the date of the taking, August 4, 1965, plus interest, which amount would be owing to the owner of the property at the time of the taking. The owner of the property on that date, the Port Valdez Company, Inc., and the City of Valdez, have entered into a settlement agreement which fully satisfied the City's liability to it for any damages caused to the Port Valdez Company, Inc. by this taking.

The superior court lacked the power to adjudicate the Company's rights, since the Company was not a party to the case. *See, e. g., Fazzi v. Peters*, 68 Cal.2d 590, 68 Cal.Rptr. 170, 173, 440 P.2d 242, 245 (1968) (en banc). While this error by the superior court did not affect Williams' rights, we think the excision of this surplusage in the judgment is an appropriate exercise of our generally supervisory power. *See* Alaska R.App. 6.

**30.** Much of the remainder of Williams' argument is concerned with alleged inconsistencies between the superior court's final judgment and its earlier oral decision. However, this judgment was entered by the court on a motion by the City after consideration of Williams' objections. In this procedural context, we do not find the final judgment to be inconsistent or contradictory with the oral rulings, though it did resolve in specific detail issues more generally discussed during the decisional hearing. Moreover, as we recently have said, "[a] majority of the court now believes that, generally, written findings should control." *Ronne v. Ronne*, 568 P.2d 1021, 1023 n.5 (Alaska 1977). *See also Johnson v. Johnson*, 544 P.2d 65, 69 n.5 (Alaska 1975).

**31.** Alaska R.Civ.P. 72 provides in pertinent part:

(a) *Applicability of Other Rules.* The procedure for the condemnation of property under the power of eminent domain shall be

provisions to be the exclusive source and guide for the award of attorney's fees to landowners in such proceedings.[32] With regard to the question presented in this case, our opinion in *City of Anchorage v. Scavenius*, 539 P.2d 1169, 1171–76 (Alaska 1975), extensively analyzed the question of allowing attorney's fees to condemnors in eminent domain cases. Rejecting a rule allowing attorney's fees for condemnors, *Scavenius* reasoned that

> the interpretation of the rule posited by the City, albeit plausible, is too literal. A more persuasive interpretation consistent with the language of the rule and with this court's discussion of that rule in *Stewart & Grindle* [524 P.2d 1242 (Alaska 1974)], is also available. That construction would view subsection (k) to be totally exclusive in regard to the allocation of costs and attorney's fees in a condemnation proceeding. The "except as otherwise provided in this rule" language of subsection (a) would be directly applicable. Rule 72 *does provide* for costs and attorney's fees to be awarded only to the property owner in a condemnation proceeding and only under certain narrowly-defined circumstances. Therefore, far from construing the silence as a license to invoke the general provisions regarding costs and attorney's fees, subsection (a) expressly prohibits allusion to the other civil rules when a specific eminent domain procedural rule is prescribed.[33]

Therefore, we concluded "that since Rule 72(k) fails to specify any conditions which would warrant imposition of costs against the property owner, the trial court did not err in refusing to authorize such an award." [34]

The City argues that the Rule 82 "prevailing party" attorney's fees provisions should apply here rather than those of Rule 72. It argues that our previous cases interpreting the Rule 72 provisions were dealing with statutory condemnation procedures and that we should limit the application of the principles enunciated there to statutory proceedings. The City argues that it would be difficult to apply Rule 72(k)'s provisions for allowing landowners attorney's fees in an inverse condemnation case. Williams rebuts the City's argument by asserting that since the basis for the judgment was inverse condemnation, "[w]hether or not [the City] was the prevailing party is of no consequence since in almost every condemnation case, the condemning authority is in effect the prevailing party."

■ We have concluded that a condemnor should not be allowed to recover attorney's fees in inverse condemnation cases. While all of the special procedures of Civil Rule 72 cannot be followed, the policy concerns underlying Rule 72(k)'s implicit disallowance of condemnor attorney's fees are still implicated.[35] A condemnor should not be allowed to benefit from its failure to institute statutory proceedings

committed by the attorney to the case throughout the entire proceedings.

**32.** See *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242, 1249, 1251 (Alaska 1974). *See also* Greater *Anchorage Area Borough v. 10 Acres*, 563 P.2d 269, 275 (Alaska 1977).

**33.** 539 P.2d at 1173 (emphasis in original).

**34.** *Id.* at 1174. We then discussed the various problems and inconsistencies which would arise were landowners required to pay the condemnor's fees and costs. *Id.* at 1174–76.

**35.** Rule 72 applies to "condemnation of property under the power of eminent domain" and is entitled "Eminent Domain." The language of the rule thus does not limit its applicability to formal statutory condemnation proceedings.

governed by these rules, except as otherwise provided in this rule.

  .   .   .   .

(k) *Costs.* Costs and attorney's fees incurred by the defendant shall not be assessed against the plaintiff, unless:
(1) the taking of the property is denied, or
(2) the award of the court was at least ten (10) percent larger than the amount deposited by the condemning authority or the allowance of the master from which an appeal was taken, or
(3) the action was dismissed under the provisions of subdivision (1) of this rule, or
(4) allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation of the owner.
Attorney's fees allowed under this subdivision shall be commensurate with the time

prior to the taking. The fact remains that it is the power of eminent domain which allowed the City to prevail in this case. Therefore, as we have noted, "the concept of prevailing party to which the state seems to be referring is not applicable to eminent domain proceedings, where the state almost always 'prevails.' "[36]

As we said with respect to inverse condemnation in *State Department of Highways v. Crosby*; 410 P.2d 724, 728 (Alaska 1966) (footnote omitted):

When the state appropriated appellees' land for the construction of a highway, it was exercising the power of eminent domain. It is true that the state did not utilize condemnation proceedings prescribed by law and by rule. . . . But neither the failure to institute a condemnation action nor appellees' assertion of a claim based on the theory of trespass changed the essential nature of the state's action in appropriating appellees' property. Such action was still the exercise of the power of eminent domain because private property was being taken by the state for a public use.

In *Crosby*, we also held that while all of the legally required procedures for condemnation cannot, as a practical matter, apply in an inverse condemnation case where the property has already been appropriated, the "statutory requirements and procedural steps" should be used to determine unresolved issues "so far as practicable." [37]

While the City's argument that Rule 72(k)'s provisions for the award of attorney's fees to landowners cannot be applied to the different circumstances of inverse condemnation has some merit, those provisions might be employed in appropriate circumstances.[38] In any event, the fact that there may be difficulties in using that rule to determine when an award of attorney's fees to a landowner is appropriate does not compel the conclusion that the rule's inherent policies should be discarded and landowners in inverse condemnation cases in effect forced to finance the condemnation litigation of the state, borough, or city.

Accordingly, we Affirm the superior court's order denying an award of attorney's fees to the City in the cross-appeal, No. 4149. The superior court's judgment in the main appeal, No. 3709, is Affirmed in part; Modified in part; Remanded for further proceedings consistent with this opinion; and jurisdiction retained for further briefing pertaining to the issues concerning Williams' liability for the costs of clearing the original blockage and the costs of restoration of the ditch to its original condition.

---

**36.** *State v. Hammer*, 550 P.2d 820, 829 (Alaska 1976) (citations omitted). In *Hammer*, the state was contesting an award of attorney's fees to landowners in a formal statutory proceeding.

**37.** 410 P.2d at 729. In *Crosby*; we held these requirements and procedures applicable to the remaining issue of just compensation.

**38.** Again, Alaska R.Civ.P. 72(k) provides:

*Costs.* Costs and attorney's fees incurred by the defendant shall not be assessed against the plaintiff, unless:

(1) the taking of the property is denied, or

(2) the award of the court was at least ten (10) percent larger than the amount deposited by the condemning authority or the allowance of the master from which an appeal was taken or

(3) the action was dismissed under the provisions of subdivision (i) of this rule, or

(4) allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation of the owner.

Attorney's fees allowed under this subdivision shall be commensurate with the time committed by the attorney to the case throughout the entire proceedings.

Subsection (1) might be used where the governmental authority is held not to have taken the property by inverse condemnation. Subsection (2) might be used, much like Civil Rule 68's offer of judgment provisions, in cases where the condemnor has made an offer of compensation for the appropriated property. Subsection (3) would not be applicable in non-statutory proceedings, but subsection (4) might provide the trial court discretion to order payment of attorney's fees to landowners by the condemnor where appropriate in an inverse condemnation case.

It is, of course, unnecessary for us to decide the applicability of these provisions to attorney's fees claims by landowners in inverse condemnation cases in this appeal.