**Paul E. DRAKE, Appellant,**

v.

**Charles F. HOSLEY, d/b/a the Charles Hosley Company, Realtors, Appellee.**

No. S-759.

Supreme Court of Alaska.

Jan. 31, 1986.

Rehearing Denied April 3, 1986.

Thomas R. Wickwire, Fairbanks, for appellant.

Woody Brooks, Aschenbrenner & Brooks, Fairbanks, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This is an appeal from a summary judgment granted in favor of Charles Hosley, entitling him to a real estate broker's commission under a contract with the seller. The superior court concluded that Hosley had fulfilled the terms of a written agreement with the seller by finding a buyer who entered into a contract to purchase in accord with the seller's terms. We affirm.

On March 5, 1984, Paul Drake signed an exclusive listing agreement with The Charles Hosley Company, Realtors (hereafter "Hosley"). The agreement authorized Hosley to act as Drake's agent until March 30, 1984, to sell some land Drake owned in North Pole, Alaska. The agreement provided for payment of a ten percent commission if, during the period of the listing agreement, 1) Hosley located a buyer "willing and able to purchase at the terms set by the seller," or 2) the seller entered into a "binding sale" during the term set by the seller.

Hosley found a group of three buyers, Robert Goldsmith, Dwayne Hofschulte and David Nystrom (hereafter "buyers"), who were interested in the property. On March 23, 1984, Drake signed a purchase and sale agreement, entitled "earnest money receipt," in which he agreed to sell the land to the buyers at a specified price and terms. The buyers also signed the agreement. It provided that closing would occur "within 10 days of clear title" and "ASAP, 1984." A typed addendum stated that Drake agreed to pay Hosley a commission of ten percent of the price paid for the property. Both Drake and Hosley signed the addendum.

On April 3, 1984, Hosley received a preliminary commitment for title insurance. The title report listed a judgment in favor of Drake's ex-wife as the sole encumbrance on the title. The next day Hosley called Drake's attorney, Tom Wickwire, to ask about the judgment. Wickwire stated that the judgment would be paid with the cash received at closing.

Two or three days later, attorney Wickwire called Hosley and stated that his client (Drake) wanted the sale closed by April 11. Wickwire explained that he had negotiated a discounted settlement with Drake's ex-wife that required payment by April 11. Wickwire claims that Hosley agreed to close by April 11. Hosley disagrees, and claims that he merely stated that he would try to close as quickly as possible.

When Hosley became concerned that the buyers would not be able to close on April 11, he telephoned the attorney for Drake's ex-wife and learned that the April 11 deadline for payment of the judgment had been extended until the end of the month.

On April 11, Wickwire called Hosley to set up the closing. Hosley told Wickwire that the buyers could not close that day because they did not have the money. and would not have it before May 1. Wickwire indicated that he would advise Drake to call off the sale because the buyers had refused to perform.[1] Wickwire mailed a letter to Hosley, dated April 11, stating that Drake's offer to sell was withdrawn. Hosley received the letter on approximately April 18. On April 12, Drake sold his property through another broker to different buyers.

On April 12, Hosley went to Wickwire's office to close the sale and submitted checks from the buyers totaling $33,000 for the down payment. Wickwire refused the checks, stating that another buyer already had purchased the property.

Hosley filed a complaint, alleging he had fulfilled the terms of the exclusive listing agreement and was entitled to payment of a commission. The parties filed cross-motions for summary judgment. The trial court granted Hosley's motion and denied Drake's. Drake appeals.

## I.

■ Drake contends he does not owe a commission to Hosley and that entry of judgment in favor of Hosley was improper. In reviewing a summary judgment, we must determine whether there are any genuine issues of material fact, and whether the moving party is entitled to judgment as a matter of law. *Moore v. State*, 553 P.2d 8, 15 (Alaska 1976). *See* Alaska R.Civ.P. 56(c).

AS 08.88.361 provides that "[a] commission is earned when the real estate broker fulfills the terms of a written personal services contract." The exclusive listing agreement between Drake, as seller, and Hosley, as broker, provided that a ten percent commission would be paid to Hosley if one of three conditions occurred:

a) if a property is sold or a *binding sale or lease agreement is entered into by Seller* during the term set by seller; or

b) if during the term of this Agreement [Hosley] *finds a buyer willing and able to purchase* at the terms set by Seller; or

c) if a buyer located by [Hosley] enters into a binding sale or lease agreement within 120 days after the expiration of this Agreement.

(Emphasis added.)

It is undisputed that during the term of the agreement, Hosley found a group of three buyers, and that Drake entered into a purchase and sale agreement ("earnest money receipt") with the buyers. The earnest money agreement signed by Drake stated: "I hereby approve and accept the above sale for said price and on said terms

---

**1.** In his brief, Hosley suggests that Wickwire responded in this way because he was confused about which party Hosley represented. Since Wickwire was not involved in the transaction when the listing and earnest money agreements were signed, Hosley suggests that Wickwire may have assumed that Hosley was acting for the buyers.

and conditions and agree to consummate the same as stated." A typed addendum to the earnest money agreement provided: "Seller agrees to pay a Realtors' commission in the amount of 10% of price to be paid by partial assignment of the deed of trust at the rate of $1,000/month."

On the basis of these facts, the trial court concluded that Hosley had performed the terms of his agreement with Drake. The court found that, within the terms of the listing agreement, Hosley located a group of buyers who entered into a binding sale agreement with Drake. The court ruled that Hosley therefore was entitled to his commission.

Drake invites this court to adopt the reasoning of *Ellsworth Dobbs, Inc. v. Johnson*, 50 N.J. 528, 236 A.2d 843 (1967), and hold that a real estate broker does not earn a commission unless the contract of sale is performed.

The traditional rule followed by a majority of jurisdictions is that a broker is entitled to a commission when he produces a buyer ready, willing and able to purchase the property on the seller's terms, even if the sale is not completed. *Sowash v. Garrett*, 630 P.2d 8, 12 (Alaska 1981). *See generally* Annot., 12 A.L.R. 4th 1083 (1982). The rationale for concluding that a potential purchaser is deemed "willing and able" the instant the purchaser signs a contract with the seller is explained in *Kopf v. Milam*, 60 Cal.2d 600, 35 Cal.Rptr. 614, 617, 387 P.2d 390, 393 (1963):

> When a vendor enters a valid unconditional contract of sale with a purchaser procured by a broker, the purchaser's acceptability is conclusively presumed because the vendor is estopped to deny the qualifications of a purchaser with whom he is willing to contract.

Drake suggests that the rule of *Dobbs* is better reasoned because it emphasizes that a broker has not produced a ready, willing and able buyer if the buyer refuses or is unable to perform at closing. *Dobbs*, 236

A.2d at 853. In a practical world the true test of a willing buyer is not met at the time a purchase agreement is signed, but at the time of closing of title. *Id.* Since the broker's duty to the owner is to produce a buyer who is financially able to pay the purchase price, it is reasonable to allow the owner to accept the buyer and enter into a sales contract without becoming liable for a broker's commission unless the sale is consummated. *Id.*

The *Dobbs* court also noted that when an owner of property lists it for sale with a broker, the owner usually expects that money for payment of a commission will come from the sale proceeds. *Id.* at 854. For these reasons, the *Dobbs* court concluded that "public policy requires the courts to read into every brokerage agreement or contract of sale a requirement that barring default by the seller, commissions shall not be deemed earned against him unless the contract of sale is performed." *Id.* at 857.

■■■ We find such reasoning persuasive. We also note that several jurisdictions recently have adopted the *Dobbs* rule, or modified versions of it. *See* Annot., 12 A.L.R. 4th 1083, 1088, 1094–1103 (1982). However, adoption of the rule does not assist Drake in this case. The *Dobbs* court specifically held that "in the *absence of default by the seller*, the broker's right to commission ... comes into existence only when his buyer performs in accordance with the contract of sale." *Dobbs*, 236 A.2d at 855 (emphasis added). A broker still is entitled to a commission if "improper or frustrating conduct" by the owner prevents title from passing. *Id.* at 853.

■■ Drake claims that there is a genuine issue of fact regarding whether the buyer or seller refused to perform. In particular he argues that there is a material factual dispute "whether Hosley, acting for the buyers, first agreed with Wickwire to close the sale on April 11, 1984, then ... refused to close on that day...."[2] Drake is correct that the existence of an agreement is

---

2. Drake did not raise this question in the trial court in his memorandum in opposition to Hosley's motion for summary judgment, nor did he

file a statement of "genuine issues of material fact," as permitted by Alaska R.Civ.P. 56(c). Hosley therefore asserts that Drake's contention

disputed. However, there is no genuine issue as to whether Hosley was acting for the buyers. Other than a bare allegation in Drake's pleadings, the record is devoid of any evidence that Hosley was representing the buyers. Hence, the buyers could not be bound whether or not an agreement to expedite closing was made by Hosley and Wickwire.

Drake points to the fact that Hosley told Drake's attorney that the buyers could not close on April 11 because they did not have the money. The fact that Hosley communicated a message from the buyers does not make him their agent. Further, the affidavit of Drake's attorney, Wickwire, does not state that Hosley ever claimed or intimated that he was acting in any role other than as Drake's broker.

■ In short, Drake failed to make any showing that Hosley was the buyers' agent and had authority to modify their contract. In the absence of such evidence, any agreement between Drake's attorney and Drake's broker could not modify the contractual obligations of the buyers. Since Hosley's right to a commission does not turn on whether he and Drake's attorney agreed to expedite closing, the disputed agreement was not a material fact that would preclude summary judgment.[3]

■ Under the terms of the earnest money agreement, the buyers were required to close within ten days after evidence of clear title was furnished. Hosley stated that he received a report from the title insurance company on April 3. The report carried a typist's date of April 2. We agree with the trial court that the buyers met the terms of the earnest money agreement by submitting checks for the down payment to Drake's agent on April 12—which was within ten days of either the April 2 or April 3 date. Thus, it was not the buyers who prevented the sale from going through.

■ We also reject a second argument raised by Drake. He contends the earnest money agreement was ambiguous, that the sale was not consummated because of the ambiguities, and that Hosley, who prepared the form, should be held responsible. The document included three provisions relating to time of performance. It provided for closing "within 10 days of clear title" and "ASAP, 1984." It also stated that "time is of the essence of this contract." We find these terms neither ambiguous nor inconsistent. Further, we find no merit in Drake's suggestion that the contract could be interpreted to allow Drake to select any day prior to the end of the ten-day period for closing.

■ Finally, Drake asserts that Hosley is not entitled to a commission because he breached his fiduciary duty to act in the best interests of his principal and to disclose any conflicts of interest. *See* AS 08.88.391. Drake claims Hosley breached this duty by representing the buyers in selecting a closing date and communicating their position to Drake. This claim is without merit. As we have noted, there is no evidence that Hosley ever acted for the buyers.

■ Drake also claims that Hosley breached his fiduciary duty by failing to disclose to Drake that one of the buyers, Hofschulte, was employed by Hosley. However, as Drake conceded in his reply brief, Hofschulte and Drake had repeated

should be disregarded. However, Rule 56(c) is merely permissive. It remains the duty of the trial court to determine whether the record presents any factual issues which would preclude the entry of summary judgment as a matter of law. *Williams v. City of Valdez,* 603 P.2d 483, 488 (Alaska 1979). Here, the trial court record included affidavits which clearly showed the factual dispute. Since the factual dispute was fairly presented to the trial court, the issue may be raised on appeal. *See Williams,* 603 P.2d at 488–489.

3. Drake claims the trial court erred in ruling that evidence of an oral modification of the closing date was barred by the statute of frauds requirement that agreements to sell real property must be in writing to be enforceable. AS 09.25.010(6). Drake cites *Black v. Dahl,* 625 P.2d 876, 880 (Alaska 1981), and asserts that a client may enforce an oral agreement against a broker. In view of our conclusion that the disputed agreement to expedite closing was not material to deciding Hosley's entitlement to a commission, we need not address the statute of frauds issue.

telephone conversations over a nine-day period during which Hofschulte sought to obtain a listing on Drake's property. The listing agreement that resulted, and also the earnest money receipt, were signed by Hofschulte on behalf of The Charles Hosley Company. We conclude that the relationship between Hosley and Hofschulte was disclosed to Drake.

To summarize, Hosley found a group of buyers who were willing and able to perform in accord with the terms set by the seller, but they were prevented from doing so by the seller's frustrating conduct. The buyers tried to perform by tendering checks for the down payment "within 10 days of clear title," as required by the earnest money agreement. The sale did not take place because the seller, Drake, sold the property to a third party during the ten-day closing period. Thus, even under the *Dobbs* rule, Hosley is entitled to his commission.

The judgment in favor of Hosley is AFFIRMED.