MARGARET KIELBINSKI, Plaintiff, v. EUGENIA SITKO, Defendant.

Supreme Court, Special Term, Kings County, February 14, 1949.

*Frank Angrisani* for plaintiff.

*I. Ryvan Korn* for defendant.

BELDOCK, J.  Plaintiff seeks specific performance by defendant of a contract to purchase a parcel of real estate located in Brooklyn.  On the day set for the closing of title, defendant refused to accept the deed tendered because of a defect in the record title.

The only question before the court is whether plaintiff is able to tender a good and marketable title.

The testimony discloses that on October 26, 1919, one Joseph Hyman, then the owner of the premises in fee simple, died intestate leaving him surviving a widow, Rose Hyman, together with their nine children.  On June 26, 1920, these surviving children conveyed to their mother " their undivided one-half right, title and interest " in and to the premises in question. The widow remained in possession of said premises until October 28, 1939, when, as grantor, she conveyed the said premises by a full covenant and warranty deed to the plaintiff in this action.  On June 5, 1948, plaintiff contracted to sell the premises to defendant.

Defendant's refusal to accept the title offered is based on the contention that there is outstanding in the heirs at law of the said Joseph Hyman, deceased, an undivided one-half interest in the premises, subject to the right of dower of plaintiff's grantor.

A brief recital of these essential facts makes it abundantly clear that there is a defect in the record title.  The heirs having conveyed only an " undivided one-half interest " to plaintiff's grantor, they became with the said grantor tenants in common in the said premises, each owning an undivided one-half thereof (Real Property Law, § 66).

Plaintiff concedes that the conveyance to her made her a tenant in common with these heirs at law.  She contends, however, that it was the intention of the children of her grantor to convey to their mother their entire interest; that the use of the words " undivided one-half interest " was evidently a mistake by the scrivener; and in any event, that her title to said outstanding one-half interest has become perfect by reason of adverse possession by herself and her predecessor in title for a total of twenty-eight years.

The alleged mistake in verbiage, if such was made, is not subject to determination herein nor can the instrument be reformed in this action.

The claim of adverse possession is based upon the assertion that from June 26, 1920, to October 28, 1939, plaintiff's grantor occupied the premises, collected rents, paid carrying charges,

kept the premises improved and in repair, and exercised full authority and control of the same openly, notoriously, adversely and in hostility to these heirs at law. Similarly, from and after October 28, 1939, the date when she became the record owner of these premises, plaintiff herself also assumed full charge, management and control of the premises. She alleges that neither she nor her grantor made any accounting to anyone for the rents collected, nor have these heirs at law made any claim of ownership either against her or her grantor.

While it is not open to doubt that one tenant in common may establish adverse ownership against his cotenant (*Zapf* v. *Carter,* 70 App. Div. 395, appeal dismissed 176 N. Y. 576; *Culver* v. *Rhodes,* 87 N. Y. 348; *Berger* v. *Horsfield,* 188 App. Div. 649), and it is quite probable that plaintiff may have good title to these premises as against the heirs at law by adverse possession sufficient to maintain her absolute right thereto were an attack to be made upon such title, still, assuming that to be the fact, it is not conclusive of the question presented to this court for determination. The controversy here is not between the plaintiff who claims title by adverse possession and the heirs at law who have an outstanding one-half interest in the title; rather this suit involves an action by the one claiming title by adverse possession and a purchaser under an executory contract of sale. The heirs at law are not parties to this action and cannot be bound by any judgment rendered herein. Defendant, if directed to accept title to these premises, might in the future still be forced to litigate with those record owners the question of their outstanding right, title and interest in these premises.

The distinction herein made between litigation by cotenants and a lawsuit which involves a claim of adverse possession by the seller against the purchaser under an executory contract has been cogently set forth by the Court of Appeals in *Simis* v. *McElroy* (160 N. Y. 156). It seems to me that the language used by the court in that case is decisive of the issue here involved. There (p. 161) the court said: " It is admitted that, as to a material part of the premises embraced in the contract, the plaintiff had no record title, but she claimed to have good title by adverse possession, and the question presented by this appeal is whether the plaintiff established title in that way so conclusively as to warrant the court in directing a verdict in her favor. It is important to bear in mind that the controversy is not between the party holding or claiming under the record title and the plaintiff claiming by adverse possession, but between the latter and a purchaser by executory contract to

recover damages for his refusal to accept a title based entirely on such adverse possession. The holders of the outstanding record title, if any, are not parties to this action and cannot be bound by the judgment, and hence the defendant, if compelled to accept the deed tendered, might still be obliged to litigate with the true owners the question of title as against them.''

And again, at pages 162–163: '' The plaintiff undoubtedly proved possession of the premises for over thirty years, and, if her right of recovery depended upon that fact alone, it was established. But possession, though a very important element in making out her title, was not the only thing to be considered. In order to prove such an adverse possession as would make her title good and require the defendant to accept it at the peril of liability in damages for the breach of his contract, *she was bound to show that the defendant could not hereafter be called upon to litigate that question with strangers to this action who might claim title under some former owner. She was bound to show that the title rendered was good, or at least marketable, as against all the world.* The proof, we think, fell far short of this requirement, and so we think that the learned court below was right.'' (Emphasis added.)

Parenthetically, it might be indicated at this point that there is no proof before this court herein negativing the possibility of an outstanding claim to the land by these heirs at law. Nor was it shown that such title is not open to contingencies of remaindership, or infancy, or other disability. (See, also, *Abbott* v. *James,* 111 N. Y. 673, 676–678; *Brokaw* v. *Duffy,* 165 N. Y. 391; *Felix* v. *Devlin,* 90 App. Div. 103.)

Were this court to compel the acceptance of the deed, the cloud upon the title would still remain. In any future contest between the heirs at law and this purchaser, the former would have a right to be heard and litigate the question of adverse possession. In such instance, the purchaser's title could be defended only by resort to parol evidence. It has been held that a purchaser will not generally be compelled to take title when there is a defect in the record title which can be cured only by resort to parol evidence. (*Irving* v. *Campbell,* 121 N. Y. 353; *Holly* v. *Hirsch,* 135 N. Y. 590, 598; *Heller* v. *Cohen,* 154 N. Y. 299.)

As was said by Judge ANDREWS in *Fleming* v. *Burnham* (100 N. Y. 1, 10): '' A title open to a reasonable doubt is not a marketable title. The court cannot make it such by passing upon an objection depending upon a disputed question of fact,

or a doubtful question of law, in the absence of the party in whom the outstanding right was vested. He would not be bound by the adjudication and could raise the same question in a new proceeding. * * * It would especially be unjust to compel a purchaser to take a title, the validity of which depended upon a question of fact, where the facts presented upon the application might be changed on a new inquiry or are open to opposing influences.''

The holding of our courts has been epitomized by Pomeroy in his Specific Performance of Contracts (3d ed., § 198, p. 512) wherein he stated: '' If, however, there arises, either on the face of the pleadings, or from the examination made during the progress of the suit, a *reasonable doubt* concerning the title to be made and given by the vendor, the court, without deciding the question between the parties then before it — which decision might not be binding upon third persons, and, therefore, might not prevent the same question from being subsequently raised by other claimants of the land — regards the existence of this doubt as a sufficient reason for not compelling the purchaser to carry out the agreement and accept a conveyance.''

While the court is in sympathy with the plight of this plaintiff, it is obvious from the foregoing that a decree compelling the acceptance of this title would leave such title open to a challenge on substantial grounds. A court of equity ought not direct a purchaser to accept a title unless it be free from encumbrances and defects. '' Titles by adverse possession are in disfavor with persons contemplating the purchase of property and with the courts '' (*Crocker Point Assn.* v. *Gouraud,* 224 N. Y. 343, 350).

The granting of specific performance by a court of equity rests in the judicial discretion of the court and may be granted or denied in the exercise of such discretion upon a consideration of all the circumstances (*Miles* v. *Dover Furnace Iron Co.,* 125 N. Y. 294, 297; *Seymour* v. *Delancey,* 6 Johns. Ch. 222; *Margraf* v. *Muir,* 57 N. Y. 155; *Gotthelf* v. *Stranahan,* 138 N. Y. 345, 351; *McPherson* v. *Schade,* 149 N. Y. 16, 21).

In view of all of the foregoing, this court is of the opinion that specific performance should not be granted in this case. Accordingly, the complaint of the plaintiff is dismissed and defendant is awarded judgment on her counterclaim, directing the return to her of the $300 paid as a deposit on the signing of the contract, in addition to the sum of $150 expended for attorney's fees and the title search to these premises. Settle **judgment on notice.**