William B. Groat, J.
This is an action involving a contract for the purchase and sale of an unimproved parcel of real property in which plaintiff seeks a return of its down payment and certain expenses incurred by it and defendant counterclaims for specific performance.
The facts are undisputed. By contract dated June 30, 1955, defendant agreed to sell and plaintiff to purchase “ lot Nos. 22, 23, 24, 25 and 26 in Block No. 12 on a certain map entitled ‘ Map of Flushing Manor, Third Ward, Borough of Queens, City and State of New York, Sec. 2A, W. Whitson, C. E. and City Surveyor [’] and filed in the office of the Clerk of the County of Queens, June 22, 1926 No. 4902.”
A search of the record disclosed the following: Defendant had acquired its title on February 23,1955, from Julius J. Spisak and Frances A. Spisak, his wife, and they, in turn, had acquired their title from Flushing Manor, Inc., on March 19, 1934. The deed to the Spisaks conveyed “ lot Nos. Twenty-two (22), Twenty-three (23) and Twenty-four (24) in blocks [sic] No. Twelve (12) ” on the map described in the preceding paragraph. That deed was recorded on March 23, 1934. In recording the description, however, the register’s office did so, in crucial part, as follows: “ lot Nos. Twenty two (22) twenty three (23) in block No. Twelve (12) and twenty four * * “By inadvertence,” in the language of defendant, “lot no. 24 was set forth in the description as block 24 and not as lot no. 24.” On February 16,1955, the original deed to the Spisaks was submitted to the register’s office where the record description was corrected to read as it did in the deed.
Some years prior to the correction of the record description, however, to wit, by deed dated November 5, 1934, and recorded on November 9,1934, Flushing Manor, Inc., the Spisaks’ grantor, purported to convey to Flushing Manor Section II, Inc., among other property, lots 20 to 24, inclusive, in block 12 on the map hereinbefore described.
*794 Flushing Manor, Inc., was dissolved on December 15, 1942, pursuant to the provisions of article 10 of the Stock Corporation Law; Flushing Manor Section II, Inc., was similarly dissolved on August 3, 1949.
Upon that state of the record plaintiff rejected the title as unmarketable. The question is whether it was right in so doing.
While a purchaser is entitled to a marketable title he is not entitled to demand a title free from all suspicion or possible doubt. (Norwegian Evangelical Free Church v. Milhauser, 252 N. Y. 186, 190; Todd v. Union Dime Sav. Inst., 128 N. Y. 636, 639; Whittier Estates v. Manhattan Sav. Bank, 181 Misc. 662, 665-666, affd. 268 App. Div. 1037.) But here, it seems to this court, substantially more than mere suspicion or possible doubt is involved. Between the time of the recording of the original erroneous description and its correction another deed to part of the property not covered under the erroneous description was recorded. Under the law in this State a bona fide purchaser is chargeable with notice of the contents of the registry and no more. (Cf. O’Neill v. Lola Realty Corp., 264 App. Div. 60; see Anno., 70 A. L. R. 595, 602, et seq.) Whether Flushing Manor Section II, Inc., was a bona fide purchaser cannot be decided on this record and determination of that question would not, in any event, bind that corporation for it is not a party to this action. (Kielbinski v. Sitko, 194 Misc. 408, and cases there cited.) The absence of revenue stamps on the deed to it can have no conclusive effect. Nor is the fact that both corporations have been dissolved of any moment. A corporation dissolved under article 10 of the Stock Corporation Law does not cease to exist. (See Stock Corporation Law, § 105, subd. 8.)
It seems to this court that to compel plaintiff to take title to the property in question would compel it to buy a lawsuit. This may not be done. (Kielbinski v. Sitko, 194 Misc. 408, supra.)
Under the contract between the parties, however, the liability of the defendant for failure to deliver title in accordance with the terms of the contract was expressly limited to refunding to the plaintiff the amount paid on account of the purchase price and to pay the net cost of examining the title. Accordingly, judgment will be entered in favor of the plaintiff in the sum of $1,161 and the counterclaim dismissed on the merits.
Settle judgment.