JOHN M. REGAN et al., Appellants, v JOHN A. LANZE et al., Respondents.

Fourth Department, April 17, 1975

*Regan & Valenti (Joseph A. F. Valenti* of counsel), for appellants.

*Martin, Dutcher, Cooke, Mousaw & Vigdor (Delon F. Mousaw* of counsel), for respondents.

GOLDMAN, J. In this action for specific performance of a contract to convey real property plaintiffs-purchasers appeal from a judgment which dismissed plaintiffs' complaint, granted defendants-vendors' counterclaim for specific performance, found that the vendors had submitted marketable title on the agreed upon closing date, and found that the parties did not intend that a portion of the property previously appropriated by the State be subject to the purchase contract. The plaintiffs also seek an award of damages in their complaint. This is the second time this matter has been before us on appeal.

Plaintiffs-purchasers originally brought this action for specific performance to convey real property, commonly known as 29 Hoyt Place, Rochester, New York, when defendants-vendors refused to correct claimed defects in their title which plaintiffs alleged had fatally affected the marketability of the property. These defects arose, plaintiffs assert, from the prior appropriation by the State of portions of defendants' property and a subsequent conveyance of a portion of the parcel to one Tubiolo and wife.

Initially, plaintiffs named the respondents, their mortgagee, the successors in title to the Tubiolos, the real estate broker in possession of the deposit, and the State of New York as parties defendant. Defendants Lanze answered demanding that the complaint be dismissed, and by way of counterclaim sought

specific performance of the contract without reformation or construction of the written instruments involved; sought $15,-000 for slander of title and $1,845 for brokerage commissions should the contract not be completed. Defendant mortgagee Security Trust Company also sought dismissal of the complaint. Plaintiffs moved for summary judgment and defendants cross-moved for the same relief. Special Term granted defendants' motion, dismissed the complaint and found for defendants Lanze on their counterclaims.

On appeal to this court we reversed and stated that "a trial is required following which a determination of the description of the property which defendants are bound by the contract to convey may be made" (42 AD2d 831). We found that a determination of the location of the parcel and a determination of whether the property which defendants Lanze contracted to convey included the triangular area at the north end of the premises, which had previously been appropriated by the State, were necessary before a conveyance could take place. We suggested that an abatement of the contract price would be in order if this triangular area were in the contemplation of the parties. We also reversed the judgment on defendants Lanzes' slander cause of action since there had been no showing of malice. Since plaintiffs in a supplemental brief' have agreed to perform specifically the contract and the conveyance was actually completed after the trial court's determination, judgment on defendants' cause of action for brokerage commissions was reversed as moot.

Pending the first appeal plaintiffs' action against the State of New York was discontinued in return for a declaration by the State "that it did not take in its appropriations of 1959 and 1962 * * * the right of access * * * for ingress and egress to, and for maintenance of sewer connections in, Hoyt Place, as relocated, and that if, in the future, there is any deprivation by the declarer of such access for ingress and egress, or for maintenance of existing sewer connections, the (State) would be required to make a future taking". Subsequent to the first appeal, plaintiffs' action against the Tubiolos' successors in title was discontinued in return for a correction deed, quitclaim in form. The defendant real estate broker did not take an active part in the trial but rather assumed the position of a disinterested stakeholder and agreed to abide by the eventual result. Defendants' mortgagee also assumed an inactive posture at the trial and thus the plaintiffs and the

defendants Lanze were left as the only interested parties upon the trial.

The trial court found, *inter alia,* that defendants' title was marketable at the date set for the original closing and that the parties did not intend that the property previously appropriated by the State was a part of the subject property. Consequently, it dismissed plaintiffs' complaint and granted judgment to defendants on their counterclaim for specific performance. We do not agree with this result.

It is the established law of New York that a purchaser is entitled to marketable title unless the parties provide otherwise in the contract *(Laba v Carey,* 29 NY 2d 302, 311). In order to be marketable a title does not have to be free from all suspicion or possible doubt *(Cymerman Bros. v Payne Homes,* 5 Misc 2d 792, affd 4 AD2d 701, affd 4 NY2d 937). However, a title which requires parol evidence to prove its validity is not marketable *(Chesebro v Moers,* 233 NY 75, 81; *Irving v Campbell,* 121 NY 353). As the court stated in *Moore v Williams* (115 NY 586, 592), "a good title means not merely a title valid, in fact, but a marketable title which can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as a security for the loan of money. A purchaser will not generally be compelled to take a title * * * which can be cured only by a resort to parol evidence".

Since we held on the first appeal that the record title was defective enough to require an evidentiary hearing on purchasers Regans' claims, the trial court erred in determining that the defendants Lanzes' title was marketable at the original date of closing. However, the trial court's factual finding that the parties did not intend that the appropriated parcels be conveyed seems to be a fair interpretation of the evidence and it is not subject to attack on this appeal (see, generally, *Collins v Wilson,* 40 AD2d 750, 751). Indeed, defendant John Lanze testified that he thought his property ended at the appropriated street and plaintiff John Regan testified that he viewed the actual frontage on Hoyt Place as it existed in 1971 prior to the signing of the contract. A reasonable interpretation of this evidence is that the parties intended to contract for the parcel as bounded by the relocated Hoyt Place as it existed in 1971.

Both sellers and purchasers were desirous of consummating the sale and the transaction was closed on November 30, 1973, pursuant to a warranty deed which satisfied both parties and

which was appended to the trial court's judgment. This, then, brings us to the remaining significant issues of this appeal: (1) who should bear the cost of completing the sale; and (2) what costs are valid. Since defendants failed to produce marketable title, specific performance should have been granted on plaintiffs' complaint and defendants' counterclaim should have been dismissed. Therefore, costs directly attributable to defendants-respondents' delay should be granted appellants as recoverable damages.

Plaintiffs list five items of direct and consequential loss due to defendants Lanzes' failure to convey marketable title on the original date of closing, for which plaintiffs contend there is support in the record. The first of these is for increased costs of construction of planned improvements. This item of increased costs of improvements does not have that ring of clear predictability of consequence for which an unsuccessful good faith litigant should ordinarily be held responsible (see, generally, *Stevens v Central Nat. Bank,* 168 NY 560, 566, 567). Recovery for this claimed damage should be denied.

The second item is for increased mortgage interest costs of ½% over 25 years. This additional cost is a predictable consequence arising out of delay in conveying title. However, the principal on which these increased mortgage interest costs should be applied is not the $39,000 cited in plaintiffs' brief, for that amount includes money borrowed for anticipated improvements to the property. The increased mortgage costs should be applied only to the $29,750 portion of the mortgage which represents the remaining purchase price due defendants at the eventual closing. Plaintiffs, therefore, are entitled to $3,718.75 for this increased mortgage interest cost.

The third item is for reasonable monthly rental. Defendant John Lanze testified on cross-examination that $300 per month "would be reasonable * * * . It is worth more in fact" as rent for the premises. A vendee entitled to specific performance may elect to take the rents and profits retained by the vendor as of the original closing date but then he must credit the vendor with interest he would have been required to pay on the purchase money for the period between the original closing date and the actual date of closing *(Matter of 50-05 43rd Ave.,* 271 App Div 44, 50, app dsmd 296 NY 824). Since the actual date of closing was postponed 22 months, the rents and profits recovery must be reduced by the amount of mortgage interest which plaintiffs would have been required to pay

if the conveyance had been consummated on the original closing date. Subtracting this amount, $4,090.63, from the rents of $6,600, plaintiffs should recover $2,509.37 for this damage.

Plaintiffs further claim $477 for additional moving costs due to the delay. This is amply proved and is clearly a predictable consequence of defendants-vendors' failure to perform and should be granted plaintiffs.

The last item of claim by plaintiffs is for legal fees of $4,900 in prosecuting this case. However, such legal fees "are merely incidents of litigation and are normally not recoverable absent contractual obligation or specific statutory authority [citations omitted]" *(Klein v Sharp,* 41 AD2d 926; see, also, *Avalon Constr. Corp. v Kirch Holding Co.,* 256 NY 137; *Miss Susan, Inc. v Enterprise & Century Undergarment Co.,* 270 App Div 747, affd 297 NY 512; *Coates v Lazaroff,* 44 AD2d 551, app dsmd 34 NY2d 944). Since there was no agreement in the purchase contract that the sellers reimburse purchasers for any legal expenses incurred, plaintiffs cannot recover on this claim.

Defendants should, of course, receive credit for various expenses which they had during the 22-month period which would have normally been borne by plaintiffs if the conveyance had taken place on the original closing date. Such items as real property taxes, insurance premiums, heating and lighting expenses and perhaps others would have been the plaintiffs' obligations if they had been in possession. Regrettably, the proof as to most of these items was not presented upon the trial. The parties are bound by the record and defendants can only recover such costs as they have proved. The only proof submitted by defendants related to real property taxes. The city tax bill in the sum of $486.65 for the period from July 1, 1972—June 30, 1973 was put into evidence by defendants. There was uncontradicted testimony to the effect that the city tax bill for the year before and the year after this period was "approximately the same". Thus, the city tax for the five months before July 1, 1972 and the five months after June 30, 1973 would amount to $405.54, or a total city tax credit to defendants of $892.19. The county tax bill in evidence for the calendar year 1972 was $144.03. The same testimony as to similarity of other years bills was given as to the county tax bill for the balance of the 22 months not included in the bill in evidence. This would make the county

tax $12 per month for the entire period or a total of $264 to which defendants are entitled. The record supports the sum of $1,156.19 for all taxes for which defendants should have credit.

Consequently, the record before us establishes that plaintiffs have sustained a total of $10,795.75 in damages directly attributable to defendants' failure to convey the property at the original date of closing. Against this amount defendants have a credit or offset of $5,246.82. The judgment therefore, should be reversed and plaintiffs should have judgment in the sum of $5,548.93.

CARDAMONE, J. P., SIMONS, DEL VECCHIO and WITMER, JJ., concur.

Judgment unanimously reversed on the law and facts with costs and judgment entered in favor of plaintiffs in accordance with opinion by GOLDMAN, J.