Richard CURRINGTON, Appellant,

v.

August A. and Miriam A. JOHNSON,
Appellees.

No. 7387.

Supreme Court of Alaska.

May 11, 1984.

Arthur Lyle Robson, Fairbanks, for appellant.

· Andrew Kleinfeld, Fairbanks, and Ann M. Johnson, Johnson, Wechsler & Thompson, P.S., Seattle, Washington, for appellees.

Before BURKE, C.J., and RABINOW-ITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

This is an appeal from an order granting specific performance of an option to purchase residential property in favor of the purchasers, August and Miriam Johnson. Richard Currington, the appellant, alleges that the trial court erred in ordering specific performance, in dismissing Currington's unlawful detainer action, and in awarding damages between the parties. We affirm the trial court's award of specific performance and its dismissal of Currington's unlawful detainer action. The superior court's award of damages is reversed in part as explained below, and the case is remanded for determination of damages consistent with this opinion.

## I. FACTS AND PROCEEDINGS

On September 9, 1979, Richard Currington and August Johnson entered into a residential lease and option to purchase a residence and land that Currington owned outside of Fairbanks. Under the lease, the Johnsons were to occupy the residence for six months beginning September 9, 1979, for rent of $700 per month. Paragraph 15 of the lease provided that Currington would "pay all extended coverage fire insurance during the rental period." The option to purchase granted "August Johnson or/and Miriam A. Johnson" the option to buy the residence "at any time from 12/15/79 till 3/5/80." If the Johnsons exercised the option, they were to pay Currington $3000 for his equity in the property. The terms of payment stated:

> This is to be a wrap around type of sale covering the $3,000 over 36 months with interest at 10–½% an Alaska State Vet. loan of approx $68,000 and a Teamsters Credit Union loan of approx $16,000 (monthly @ $520 & $180) the latter two loans are to be refinanced by March 5, 1983.

Upon exercise of the option, Currington was to:

> execute a proper deed of conveyance for [the] property and deliver the same to any title or escrow agency chosen by

[Johnson] to be held by them in escrow and delivered to [Johnson] upon final payment.

The option agreement contained no integration clause.

August Johnson, who negotiated the lease and sale with Currington, kept handwritten notes of the transaction. According to these notes, the "[s]ix months rent will not apply to purchase." Additionally, the escrow was to "provide for payments to be made to existing mortgages to be made by Sellers." The Johnsons' payments were to "be sufficient" to cover the payments on Currington's equity, as well as his current two mortgage payments. Currington was "to pay at his own expense mortgage payments during the rental period," to "provide for fire insurance," and "[t]axes and insurance, plus or minus, [were to] be prorated at the time option is exercised."

On about February 26, 1980, the Johnsons exercised their option to purchase the residence by mailing a document in which this election was declared to Currington's attorney. They recorded the document on March 4, 1980. However, Currington refused to execute and tender into escrow a deed to the property. He took the position that he would not execute a deed until the Johnsons paid off his veterans' loan in full. Currington desired to obtain another veterans' loan to finance a house in Juneau, but could not do so while the present loan was outstanding.

After they notified Currington of their exercise of the option to purchase the property, the Johnsons continued to send him $700 per month. Currington accepted these checks through December 1980, but returned checks for January, February, and March 1981.

On May 21, 1981, the Johnsons sued for specific performance, alleging that they had fully complied with the terms of the option to purchase, but that Currington had refused to go through with the transaction. On May 26, 1981, Currington filed a complaint for "forcible detainer." The Johnsons answered this complaint incorporating by reference their complaint for specific performance as a counterclaim. The actions for specific performance and unlawful detainer were consolidated.

Currington moved for summary judgment on the issue of possession and the Johnsons moved for summary judgment on the issue of specific performance, while seeking to reserve for trial the issue of damages, and for dismissal of Currington's unlawful detainer action. In their memorandum supporting these motions, the Johnsons alleged that unlawful detainer would not lie because title to the property was in dispute. In his memorandum in opposition to the Johnsons' motion, Currington questioned whether the option to purchase had been voided by the veterans' loan statutes or was illegal pursuant to those statutes, whether the option was void as against the public policy supporting the veterans' loan statutes, and whether the option was discharged by frustration of purpose since his veterans' loan might be accelerated if he conveyed the property to the Johnsons.

Judge Warren W. Taylor ruled in favor of the Johnsons, ordering the dismissal of the unlawful detainer action and granting specific performance of the option contract. Damage questions were reserved for trial.

Judge Taylor conducted the trial after which he issued an order detailing each party's monetary liability.[1] Setting off the

---

1. The court order awarded each party the following amounts:

Johnson's Claim:

| Interest differential | |
|---|---|
| 2–3/8 percent over 30 years, discounted at 10.5 percent | $16,203.44 |
| Interference with "Quiet Enjoyment" | $ 200.00 |
| Attorney's fees | $ 4,000.00 |
| Subtotal: Johnsons' claim | $20,403.44 |

Currington's Claim:

| Payments made by Currington on Veteran Credit Union notes following exercise of option | $23,858.64 |
|---|---|
| Less payments by Johnsons since option date to Currington | $ 7,000.00 |

liability, the court ordered that the Johnsons have judgment against Currington for $3643.66. However, the Johnsons requested an adjustment in this order, noting that they had already submitted to escrow the amount due Currington. Accordingly, an amended order was issued awarding the Johnsons damages of $20,403.44.

Currington appealed. We remanded the case to the superior court with direction to enter detailed findings of fact concerning the award of interest differential damages. These findings have been entered.

## II. TIMELINESS OF APPEAL OF PARTIAL SUMMARY JUDGMENT

In their jurisdictional statement, the Johnsons assert that Currington's appeal from the partial summary judgment was not timely because it was taken more than thirty days after the partial summary judgment was entered.

Appellate Rule 202(a) states that an "appeal may be taken to the supreme court from a final judgment entered by the superior court...." This court has held that "[a]s a general rule, a partial summary judgment order is considered 'interlocutory' and non-appealable unless there is a specific statutory provision providing for appeal." *Williams v. City of Valdez*, 603 P.2d 483, 487 (Alaska 1979) (footnote omitted). In *Williams*, we stated that a partial summary judgment that disposed of the legal issue of inverse condemnation but left the issue of damages for trial was not a final judgment. *Id.* at 488. Similarly, in the present case, the issue of specific performance was resolved summarily, leaving

the issue of damages for trial. Therefore the partial summary judgment did not constitute a final judgment, and since Currington appealed within 30 days of the entry of the amended order which determined the damage issues, we conclude that his appeal as to the order of specific performance was timely.

The question of whether Currington's appeal was timely as to his wrongful detainer action presents a slightly different issue. This action originally was filed as a separate suit and the partial summary judgment order dismissed the action, leaving no question of damages. The issue is then whether Civil Rule 54(b), which provides that judgment on one issue in a multi-issue case is not a final judgment unless expressly designated as such by the trial court,[2] applies to cases which contain multiple issues only through consolidation pursuant to Civil Rule 42(a). We conclude that the requirements of Rule 54(b) do apply to consolidated cases. When faced with this issue the Wyoming Supreme Court reasoned:

If this were not so, an appellate court might be called upon to review piecemeal numerous cases which were in the principal aspects identical and during such period the various parties interested in the litigation would be subject to much confusion in attempting to comply with the requisite steps in appeal. It is, of course, conceivable that there would be exceptional circumstances which might influence the trial court to certify that there was no cause for delay in entering the final judgment and thus permit an appeal, but the propriety of such an ar-

| Less late charges incurred by Currington | $ 98.86 |
| --- | --- |
| Subtotal: Currington's claim | $16,759.78 |

**2.** Civil Rule 54(b) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all

of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

rangement can best be determined by the court which tried the case.

*State ex rel. Pacific Intermountain Express, Inc. v. District Court of Second Judicial District,* 387 P.2d 550, 552 (Wyoming 1963). *See also* 9 C. Wright and A. Miller, Federal Practice and Procedure § 2386 (1971); 6 J. Moore, Moore's Federal Practice ¶ 54.22 (2d ed. 1971); *cf. Jones v. Den Norske Amerikalinje A/S,* 451 F.2d 985, 986–87 (3d Cir.1971) (where consolidation was not for all purposes but only for trial, and separate judgment was entered in favor of one appellee, the judgment in favor of that appellee is probably final). In conclusion, we find Currington's appeal timely as to all issues.

## III. SPECIFIC PERFORMANCE

Currington raises four grounds in opposition to the grant of specific performance of the option contract. He asserts that the contract is void as prohibited by the Alaska Veterans' Act; is illegal pursuant to the same Act; is against public policy as expressed by the Act; and is void under the doctrine of frustration of purpose.

▌ A contract is void and hence not subject to specific performance if it is

directly and explicitly prohibited by a constitutional statute in unmistakable language.... However, it is not necessary that there should be an express prohibition in a statute to render void a contract made in violation of it.

*Sheely v. Martin,* 10 Alaska 331, 341 (D.Alaska 1942); *see also* 14 S. Williston, A Treatise on the Law of Contracts § 1628, at 3 (W. Jeager 3d ed. 1972); 15 Williston

§ 1763, at 202–03. AS 26.15.130 sets the qualifications for veterans' loan recipients.[3] While neither of the Johnsons qualifies under this section, the transfer of property financed by a veterans' loan to a non-veteran is not prohibited. Under Mr. Currington's deed of trust with the Veterans' Affairs Division, such a transfer will give the lender the option to call the loan due, however, such a contract is neither expressly prohibited nor illegal.[4]

▌ Similarly, we find no public policy grounds for voiding a contract transferring property financed by a veterans' loan to a non-veteran.[5] Any public policy restricting the assumption of such loans by non-veterans is adequately served by the Veterans' Affairs Division's option to call in such a loan.

▌ Neither do we find the option contract voidable under the doctrine of frustration of purpose because Currington's veterans' loan could be called due. Section 266(2) of the Restatement (Second) of Contracts (1981) states:

Where, at the time a contract is made, a party's principal purpose is substantially frustrated without his fault by a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty of that party to render performance arises, unless the language or circumstances indicate the contrary.

Given the clause in his deed of trust, Currington clearly had reason to know of the possibility of acceleration of his veterans'

---

**3.** AS 26.15.160 extends the benefits to veterans of Korea and Vietnam.

**4.** Paragraph 11 of Currington's deed of trust provides:

Should Borrower sell, convey, transfer, dispose of or further encumber said property, or any part thereof, or any interest therein, or agree to do so, without the written consent of Lender being first obtained, then Lender shall have the right at its option to declare all sums secured hereby, forthwith due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the property is to

be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Deed of Trust shall be at such rate as Lender shall request; provided, however, that there may be no waiver if the person to whom the property is sold is not eligible for a loan under AS 26.15.130 [statute indicating who qualifies for veterans' loans].

**5.** *See McKnight v. Rice,* 678 P.2d 1330, 1334 (Alaska, 1984) for a discussion of the validity of a contract provision conflicting with public policy.

loan at the time the option contract was formed.

## IV. UNLAWFUL DETAINER

Currington argues that his unlawful detainer action was improperly dismissed. We disagree.

 It is clear that unlawful detainer will not lie when title is in issue; the plaintiff must instead seek possession through ejectment. *Modrok v. Marshall*, 523 P.2d 172, 174 (Alaska 1974); *see also Johnson v. Robinson*, 637 P.2d 1051, 1052 (Alaska 1981) (per curiam). The Johnsons had a valid option to buy the property in question. Under the doctrine of equitable conversion, they became equitable owners of the property when they exercised their option. *See Harrison v. Rice*, 89 Nev. 180, 510 P.2d 633, *appeal after remand* 92 Nev. 645, 555 P.2d 1325 (1973); *Smith v. Tang*, 100 Ariz. 196, 412 P.2d 697 (1966). *See also* 77 Am.Jur.2d *Vendor and Purchaser*, § 317 (1975). Therefore, as the trial court held, the Johnsons had some claim to title of the property at the time Currington sought to evict them through an unlawful detainer action. Under *Modrok*, the action was properly dismissed.

## V. COMPUTATION OF CURRINGTON'S DAMAGES

### A. The March 1980 payment

Currington challenges $700 of the $7,000 which the trial court credited to the Johnsons as already paid under the option contract. Currington alleges that this $700 March 1980 payment was the last monthly payment under the rental agreement of the parties and, even though paid after the Johnsons had exercised their option to buy, should not have been credited to the purchase. We agree.

 The Johnsons were to lease the property from Currington for six months beginning September 9, 1979, for $700 per month. The first payment was made on September ninth, and the following fees were to be paid on the first of each month beginning November first. The payment made March first thus was for the period from February 9, 1980 to March 9, 1980. The written contract between the parties did not specify whether rental payments tendered after the option to buy was exercised were to be credited towards the rental price. However, Mr. Johnson's handwritten notes state: "Six months rent will not apply to purchase." [6] Thus, the Johnsons only should have been credited with $6,300 as paid towards the purchase of the property, an amount not including the six payments under the lease.

### B. Insurance Premiums

 Currington next challenges the trial court's failure to award him $3,087 for insurance premiums he paid on the house in 1980, 1981, and 1982. The contract provides that Currington was to pay for insurance during the rental period, but is silent as to who was responsible for payments after the option was exercised. However, Johnson's notes state:

> Seller will provide for fire insurance and will pay real estate taxes during the rental period.

> Taxes and insurance, plus or minus, will be prorated at the time option is exercised.

Thus, the Johnsons were responsible for at least a portion of the insurance premiums.

 The trial court made the following finding of fact in regard to the insurance premiums:

> 15. Mr. Currington claims a right to reinstatement for insurance paid on the premises. Such insurance was maintained primarily if not exclusively for his own benefit, however; the Johnsons were not named as insured parties, nor is there any evidence that they were aware of such coverage and able to coordinate

6. "In order to give legal effect to the parties' reasonable expectations, the court must look first to the written agreement itself and also to extrinsic evidence regarding the parties' intent at the time the contract was made." *Norton v. Herron*, 677 P.2d at 879 (Alaska, 1984) (citation omitted). *See also Alyeska Pipeline Service Co. v. O'Kelley*, 645 P.2d 767, 771 n. 1 (Alaska 1982).

it with their own insurance plans, or otherwise benefited by it.

The conclusion that Currington maintained the insurance "primarily if not exclusively for his own benefit" is erroneous. In the event the property had been destroyed, the insurance proceeds would have covered the Johnsons' debt under the sales contract with any excess going to them directly.[7] *Moran v. Kenai Towing and Salvage, Inc.*, 523 P.2d 1237, 1239–40 (Alaska 1974). The case would be different if the Johnsons had purchased insurance on the house themselves due to a lack of knowledge of the insurance which Currington maintained. However, the Johnsons presented no such evidence. Accordingly, we remand to the superior court in order that it may determine the proper basis for prorating the premiums.

### C. Prejudgment Interest

Currington also challenges the trial court's refusal to award him $2,556.37 in prejudgment interest for his loss of use of the funds with which he maintained his house payments while the litigation was pending. The Johnsons contend that the figures which Currington submitted below were inaccurate and not admitted into evidence. They also argue that since most of the reimbursement to Currington was for interest on his mortgage rather than principal, he should get no further interest. The Johnsons argued below that Currington's fault in causing the delay also should be considered in awarding prejudgment interest.

In *Farnsworth v. Steiner*, 638 P.2d 181 (Alaska 1981), we stated:

When a cause of action arises, the injured party becomes immediately entitled to be made whole, and the amount later adjudicated as damages becomes *due* .... Therefore, '[a]ll damages ... should carry interest from the time the cause of action accrues.'

. . . .

It is only when [an award of prejudgment interest] would do an injustice that it should be denied. ... We have observed that such an injustice would occur 'in only the most unusual case,' ... and that even a lengthy delay attributable to the plaintiff is not an occasion for such denial.... Since an award of interest is not a penalty but compensation, fault for the delay between the injuring event and payment of consequential damages is irrelevant....

The real question in awarding interest to a judgment creditor is whether the debtor has had use of money for a period of time when the creditor was actually entitled to it....

*Id.* at 183–84 (footnotes and citations omitted).

Thus, any fault of Currington in delaying the conveyance is not to be considered in awarding prejudgment interest. *See, e.g., Miller v. Sears*, 636 P.2d 1183, 1194–95 (Alaska 1981) (prejudgment interest awarded to party whose actions caused rescission of realty contract). The argument that Currington should receive no more interest because he was already reimbursed for mortgage interest is specious. Prejudgment interest compensates Currington for his loss of use of funds; that those funds went to pay mortgage interest does not support an argument against prejudgment interest. Given the trial court's failure to consider the accuracy of Currington's calculation of interest, we remand for a determination of the proper amount of prejudgment interest to which Currington is entitled.[8]

---

7. Currington testified that he maintained insurance on the house for "a little over a hundred thousand" dollars and that the underlying mortgage amounted to approximately eighty-four thousand dollars.

8. Currington offhandedly challenges the failure of the trial court to award him monthly escrow costs of $3.20. We need not address this issue because of inadequate briefing, *see State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980); *Lewis v. State*, 469 P.2d 689, 691–92 n. 2 (Alaska 1970), but we note that Johnson's notes state that the seller was to pay escrow costs.

## VI. COMPUTATION OF JOHNSONS' DAMAGES

### A. The Interest Differential

Currington asserts that the court erred in awarding the Johnsons damages for the differential between the interest rate they could have received had he performed on time, and that which they had to accept at the time of the decree. The Johnsons argued below that they should be compensated for having to pay a higher interest rate because of the delay in conveyances. The court agreed, and awarded them $16,203.44, reflecting an interest differential of 2⅜% over 30 years, discounted for present value at a discount rate of 10.5%.

The Johnsons cite numerous cases indicating that an award of interest differential is proper. By way of introduction, they note that "damages" awarded incidental to a specific performance decree are not damages in the contract sense. Rather, the money awarded is by way of compensation to adjust the equities between the parties in order to place them in the position that they would have occupied had the contract been timely performed. Performance is thus related back to the date that it should have been performed under the contract. *Dillingham Commercial Co., Inc. v. Spears*, 641 P.2d 1, 10 (Alaska 1982); *Guard v. P & R Enterprises, Inc.*, 631 P.2d 1068, 1070 (Alaska 1981). "The result is more like an accounting between the parties than like an assessment of damages." *Id.*

Relying on this general rule, numerous recent cases have upheld the propriety of awarding compensation for an interest differential as damages incidental to a specific performance decree. In *Hutton v. Gliksberg*, 128 Cal.App.3d 240, 180 Cal. Rptr. 141 (1982), a California court of appeal stated:

> Specific performance is an action in equity.
>
> . . . .
>
> Buyers will suffer this increased cost because Sellers failed to perform their obligation to convey the property. If Buyers do not receive compensation for this cost, their remedy of specific performance may be prohibitively expensive and thus rendered nugatory.
>
> . . . .
>
> Thus we conclude that the trial court was empowered to grant compensation to Buyers, incidental to specific performance, for the differential in interest rates.

*Id.* at 146–47 (citations omitted).[9]

We agree with the *Hutton* court that awarding compensation for differences in interest rates in specific performance actions is appropriate in proper cases. *See Norton v. Herron*, 677 P.2d 877, 884 n. 11 (Alaska, 1984). However, there must be some basis from the trial record on which to fairly calculate the difference in interest rates to which a party is entitled. In the cases that have granted buyers compensation for differences in interest rates, the buyers had uniformly obtained actual loan commitments which had expired due to the sellers' failure to properly complete the sales.[10] The Johnsons never obtained such a loan commitment.

Summarizing the trial court's findings of fact,[11] Judge Taylor determined that mort-

---

**9.** *See Reis v. Sparks*, 547 F.2d 236, 239–40 (4th Cir.1976); *Godwin v. Lindbert*, 101 Mich.App. 754, 300 N.W.2d 514, 515–16 (1980) (per curiam); *Cal-Val Construction Co. v. Mazur*, 636 S.W.2d 391, 392–93 (Mo.App.1982); *Regan v. Lanze*, 47 A.D.2d 378, 366 N.Y.S.2d 512, 516–17 (1975), *rev'd on other grounds*, 40 N.Y.2d 475, 387 N.Y.S.2d 79, 354 N.E.2d 818 (1976); *see also Turley v. Ball Associates, Ltd.*, 641 P.2d 286, 289 (Colo.App.1981); *Walker v. Benton*, 407 So.2d 305, 308 (Fla.App.1981); *Foust v. Hanson*, 612 S.W.2d 251, 254 (Tex.Civ.App.1981).

**10.** This was the situation in all the cases cited in note 9, *supra*, with the exception of the New York case, *Regan v. Lanze*. In that case, there was discussion of a one-half percent interest differential, but no language expressly indicated that the plaintiffs had a loan commitment. 366 N.Y.S.2d at 516–17.

**11.** The trial court justified its award of an interest differential with the following findings of fact:

> 6. Mr. Currington demanded that Mr. Johnson refinance during the summer of

gage money had been available to the Johnsons at 10% during 1980 and 1981 when they were financially able and desirous of obtaining a loan, and that interest rates had risen to 12⅜% as of the hearing date, August 17, 1982. The court further found that the Johnsons had lost the opportunity to mortgage the property at the lower rate because of Currington's rejection of their attempt to exercise their option. Thus, the court concluded at least by inference that Currington's actions were the proximate cause of the Johnsons' failure to obtain 10% financing.

We believe such a finding, if supported by the evidence, could justify an interest differential award. However, we conclude that the finding is clearly erroneous given the evidence presented at trial.[12] Mr. Johnson did testify that he was desirous of obtaining refinancing by the end of 1980. However, this statement came over

1980. Mr. Johnson refused to do so then, because of other financial burdens upon him. He believed his financial circumstances would improve within a few months, and he preferred to wait. Under the terms of the option, he was entitled to make that decision.

7. By the end of 1980, relations had further deteriorated between the parties. Mr. Currington still refused to establish the escrow called for by the option, and demanded an immediate refinance. Mr. Johnson, though by then financially able to and desirous of completing a refinance, disputed the figures submitted by Mr. Currington as required to close the transaction.

· 9. Mr. Johnson has been financially able to refinance the property since the end of 1980, but he has been impeded by Mr. Currington's rejection of the option, and has been deprived of the opportunity to do so at the most favorable rates. To comply with the option agreement, he must now refinance before March 5, 1983.

10. The court accepted the testimony of Stephen Street, a commercial banker familiar with residential loan rates available to Mr. Johnson under different programs during the three year period in question, and with the trend of rates at the time of the hearing. His uncontroverted testimony was that the most favorable rate available to Mr. Johnson at the time of the hearing was 12⅜% per annum, and that residential loan rates were remaining relatively constant, with perhaps a light upward direction. He further testified that under the Alaska Housing Finance Corporation

two years later, when Mr. Johnson had the advantage of hindsight as to changes in interest rates. The fact is that the Johnsons did not apply for a loan in 1980 or 1981. Currington did not cause this inaction. He actually requested refinancing throughout 1980, and the Johnsons refused, properly relying on the fact that they had no obligation to do so.[13] Indeed, the correspondence between the parties indicates that the Johnsons' refusal to refinance continued at least until the lawsuit was filed in May of 1981 and seems to have been the nub of the dispute between the parties. Finally, the Johnsons' counsel in their reply memorandum in support of motion for summary judgment submitted on January 7, 1982 stated that the Johnsons had planned to pay off the loan on March 5, 1983.[14] Given these circumstances, the award of an interest differential was in error and is reversed.

there had been loans available within the previous two years at 10% per annum interest, and that 10% loans had been available within the past year under a bond issue sold by the City of Fairbanks and the North Star Borough.

12. Under Civil Rule 52(a), findings of fact will only be set aside if "clearly erroneous." We stated in *Strack v. Miller*, 645 P.2d 184, 186 (Alaska 1982), that "A finding is clearly erroneous when upon consideration of the whole record we are left with the definite and firm conviction that a mistake has been made."

13. Mr. Johnson was asked on cross-examination by Currington's counsel:

Q. Were there, in point of fact, while this case was going on, several requests or demands by this side that you refinance and get the thing over with?
A. Yes.

14. The statement is:

Acceleration of the loan would not necessarily cause Mr. Currington harm so as to justify his release from his contract. The only effect of the acceleration would be to require the loan to be paid off before the date the Johnsons had planned (March 5, 1983), in order to avoid foreclosure. The fact that the Johnsons were not willing to pay off that loan at Mr. Currington's demand when, in their belief, they are not required to do so under their contract, does not prove inability to do so if in fact it becomes a requirement.

## B. Attorney's Fees.

Currington also challenges the award to the Johnsons of $4,000 in attorney's fees. He claims that the Johnsons cannot be prevailing parties under Civil Rule 82 if the final accounting between the parties shows that, on balance, the Johnsons owe Currington damages.

■ We conclude that irrespective of the final accounting the Johnsons are the prevailing parties. Their right to the conveyance of the property in dispute was the "main issue" of the litigation; on that issue they prevailed. *See Cooper v. Carlson,* 511 P.2d 1305, 1308 (Alaska 1973); *see also Gold Bondholders Protective Council v. Atchison, Topeka and Santa Fe Railway Co.,* 658 P.2d 776, 779 (Alaska 1983).[15]

## VII. CONCLUSION

We AFFIRM the superior court with respect to its grant of specific performance of the option contract, its dismissal of Currington's unlawful detainer action, and its award of attorney's fees to the Johnsons. We REVERSE the superior court as to its award of the $700 March, 1980 payment as credit to the Johnsons, its award of interest differential damages to the Johnsons, and its refusal to award Currington damages for insurance premiums and prejudgment interest. This case is REMANDED to the superior court for the determination and award of damages consistent with this opinion.

15. On remand, the superior court should reconsider the amount of attorney's fees awarded in light of the changes which this opinion mandates.