Anthony J. APPOLLO, et al.,
Respondents,

v.

Leslie J. REYNOLDS, et al., Appellants.

No. C5–84–1637.

Court of Appeals of Minnesota.

March 5, 1985.

Alan L. Dworsky, Luther & Ballenthin, Minneapolis, for respondents.

Gerald L. Svoboda, Dean B. Thomson, Fabyanske, Svoboda & Westra, St. Paul, for appellants.

Heard, considered and decided by LANSING, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

The buyers of several townhouses sued the sellers when they were unable to close on the dates specified in their respective purchase agreements, due to delays in construction. The trial court awarded the buyers damages caused by the increase in interest rates between the time of the originally scheduled closings and the actual closing dates. The sellers have appealed. We affirm.

## FACTS

In 1983 the respondents ("buyers") each signed purchase agreements for townhouses built and sold by the appellants ("sellers"). The closing dates were specified in the agreements, and the sellers promised to complete and convey the homes on those dates. However, heavy rainfall caused a substantial delay in the completion of the townhouses, and the closings therefore did not take place on the dates indicated in the purchase agreements. The sellers scheduled later closings for September and October 1983, but the buyers refused to close on those dates, claiming that the interest rates had gone up since the originally scheduled closing dates. The loan application agreements signed by the buyers stated that their mortgages could be closed at the interest rate permitted by FHA regulations as of the dates of closing. On the dates originally scheduled for closing the FHA interest rate was 12%, whereas on the actual closing dates the FHA interest rate was 12.5%.

The buyers did eventually agree to close in November 1983, although the interest rates remained high. Because the sellers refused to pay the difference between the interest rate on the originally scheduled closing dates and the interest rate on the actual dates of closing, the buyers sued.

The sellers answered claiming that they could not have closed on the originally scheduled dates anyway because the points were too high. The purchase agreement contained language indicating that the sellers would pay no more than five points. Because the points on the original closing dates were more than five, the sellers argued that performance of the contract was suspended.

The trial court indicated in its memorandum that it was "not impressed" by the sellers' argument that since the points on the contract closing dates were more than five, the sellers would not have had to close on those dates anyway. The court therefore awarded the buyers the interest rate differential, and the sellers appealed.

## ISSUES

1. Did the fact that the points were more than five temporarily suspend the sellers' obligation to close on the originally scheduled dates?

2. Did the trial court properly award as damages the difference between the rate of interest at the time of the originally scheduled dates of closing and the rate at the time of the actual closings?

## ANALYSIS

### I.

The sellers argue that their agreement to pay up to five points was a condition precedent to performance of the contract. They claim, therefore, that because the points were more than five on the dates of the originally scheduled closings, this non-occurrence of the condition precedent temporarily suspended their duty to close on the agreed-upon dates.

As noted above, the court rejected this argument, stating:

The court is not impressed by [sellers'] argument that since the points on the contract closing dates were more than 5, the [sellers] would not have had to close anyway on those dates. In that event, their option would have been to return the purchase money. No such offer was ever made to the [buyers]. In fact, the [sellers] had always demanded performance of the contractual agreement except in attempting to cancel the agreements for the alleged [buyers'] non-performance; and then the [sellers] claimed forfeiture of the earnest money.

As the sellers themselves concede, if the townhouses had been ready at the time of the originally-scheduled dates, the closings could still have taken place. The sellers could have paid more points or the buyers could have increased their down payments or obtained alternative financing. The court found that the sellers had always demanded performance of the contract and that the buyers were ready and willing to complete the purchases on their respective closing dates. These are factual determinations, which should be disturbed only if there is no evidence to reasonably support them. *Gaertner v. Rees*, 259 Minn. 299, 305, 107 N.W.2d 365, 369 (1961). Because the sellers have provided no transcript, these findings will be upheld.

By determining that the sellers continued to demand performance of the agreement, the court implicitly found that the sellers had waived the condition that the points be below five. A party to a contract may waive a condition precedent which exists for his own benefit. *Dolder v. Griffin*, 323 N.W.2d 773, 778 (Minn.1982). Ignoring a provision in a contract will constitute waiver, *Edelstein v. Duluth, M. & I.R. Ry. Co.*, 225 Minn. 508, 31 N.W.2d 465 (1948), and waiver may be found where a party continues to exercise rights under a contract even though he knows a condition has not occurred or cannot be performed. *Kennedy v. Hasse*, 262 Minn. 155, 114 N.W.2d 82 (1962). Thus, when the sellers continued to demand performance of the purchase agreement even though the condition concerning points had not been met, the sellers waived that condition.

The trial court determined that if the sellers had wished to be excused from performing on the originally scheduled dates due to the increased number of points, they should have rescinded the contract and returned the buyers' earnest money. The sellers, however, argue that the increase in points did not extinguish the contract, but merely suspended their duty to perform until the points went down. As authority for this claim, the sellers cite the Restatement of Contracts 2d, which states in relevant part:

§ 225. Effects of the Non-Occurrence of a Condition

(1) Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused.

(2) Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.

(3) Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur.

Restatement (Second) of Contracts § 225 (1981). The sellers argue that under the

above provision and the comments thereto their duty to close was suspended for a reasonable time until the points fell below five.

■ The language of the Restatement specifically refers to the "time for occurrence" and the time "when the condition can no longer occur." The trial court found that in this instance "[t]he closing and possession dates named in the purchase money agreements were integral and essential terms of said contracts." The court found further:

> Closing dates are an integral part of the purchase of one's home. The sale of one's present residence, or the termination of a rental agreement, are matters of timing synchronized with possession of the newly purchased dwelling.

It is therefore clear that after the passage of those closing dates the condition could no longer occur, since the time for performance had expired. The sellers' option at that point, then, was either to waive the condition or return the earnest money. The facts found by the trial court demonstrate that because the earnest money was not returned and because the sellers continued to demand performance of the contracts, they therefore waived the points provision.

## II.

The sellers argue that the trial court improperly awarded the buyers the differential between the interest rate on the originally scheduled dates of closing and the interest rate on the actual date of closing, claiming that this type of damage was unforeseeable. However, several courts have awarded this type of damages in similar situations. As stated by one court:

> In the context of real estate transactions, interest rate differentials have been awarded as damages for breach of contract and as ancillary relief in actions for specific performance. * * * The increased financing cost is a predictable consequence of the vendor's delay in completing the transaction. * * * This approach recognizes the recent trends,

noted above, in the relationship between financing terms available and the sale of a particular house.

*Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1077 (Del.Supr.1983) (citations omitted). At least ten other courts have allowed such damages. Cases cited by the sellers which have found interest rate differentials to be unforeseeable have been expressly based upon the facts at hand, and indicate that such damages would otherwise be recoverable.

The sellers would distinguish those cases which have allowed interest rate differentials as damages, claiming that in each of those cases the buyer had obtained a loan commitment. This distinction was also noted by the court in *Currington v. Johnson*, 685 P.2d 73 (Alaska 1984) which explained that there must be a basis for the calculation of damages. In *Currington* since the buyer had not obtained a loan commitment the trial court determined the interest rates which had been available when it calculated the lost opportunity to mortgage at a lower rate. The Alaska Supreme Court affirmed this procedure, although determining that the actual figures were not supported by the evidence.

■ In the present situation the court was able to specifically find the interest rates at the time of the original and actual closing dates, and the sellers do not dispute those figures. Thus, the rates of interest were not incapable of determination due to the fact that the buyers had not obtained a loan commitment. An additional reason exists for rejecting the sellers' argument that to award interest rate differentials as damages the buyers must have obtained loan commitments: the facts indicate that it was impossible for the buyers to obtain loan commitments by the closing dates due to the sellers' own failure to timely submit a master appraisal to FHA for approval.

■ The sellers also question the method of calculation of damages used by the trial court. The court first determined the amount of the monthly increase in the interest rate, multiplied that amount by twelve to determine the annual increase in

cost, and then multiplied by thirty to determine the total increase in cost over a period of thirty years. Based on these figures the court then calculated the amount necessary to make the buyers whole when such amount was invested at 9%. The court awarded that amount as damages. We find that this method of awarding damages was reasonable when compared to methods used by other courts.[1]

### DECISION

The trial court's award of damages due to the increase in interest rates between the time of the scheduled closings and the time of the actual closings was proper.

Affirmed.

1. *See Hutton v. Gliksberg,* 128 Cal.App.3d 240, 180 Cal.Rptr. 141 (1982); *Turley v. Ball Associates, Ltd.,* 641 P.2d 286 (Colo.App.1981); *Godwin v. Lindbert,* 101 Mich.App. 754, 300 N.W.2d 514 (1980); *Regan v. Lanze,* 47 A.D.2d 378, 366 N.Y.S.2d 512 (1975); *Foust v. Hanson,* 612 S.W.2d 251 (Tex.Civ.App.1981); *Bevan v. J.H. Construction Co., Inc.,* 669 P.2d 442 (Utah 1983).