Patrick J. SULLIVAN, et al.,
Respondents,

v.

Charles W. EGINTON, et al.,
Appellants.

No. C7–86–2227.

Court of Appeals of Minnesota.

June 2, 1987.

Timothy B. Poirier, Harrigan, Hanley & Poirier, Minneapolis, for respondents.

John E. Daubney, St. Paul, for appellants.

Considered and decided by POPOVICH, C.J., and HUSPENI, and MULALLY,* JJ., with oral argument waived.

* Acting as judge of the Court of Appeals by ap-

## OPINION

EDWARD D. MULALLY, Acting Judge.

This is an appeal from a judgment entered against appellants in an action alleging delay in yielding possession following the sale of residential real estate. Respondent buyers recovered damages and were granted a permanent injunction. We affirm as modified.

## FACTS

In the summer of 1985, appellants Charles and Lilli Eginton advertised for sale a house which Charles had inherited from his mother. The Egintons did not reside in the house, Charles' boyhood home, but he maintained an office there and the house was fully furnished.

Respondents Patrick and Suzanne Sullivan answered a newspaper ad, viewed the house, and on July 25, Patrick Sullivan met with Charles Eginton to discuss terms. They agreed to terms in the morning and Sullivan returned in the afternoon to sign a purchase agreement. The purchase agreement provided that the parties would close on November 1, and the Sullivans take possession, "not later than November 1."

Soon after the purchase agreement was signed, Sullivan asked Eginton to move the date of closing up to October 7, to fall within the 60–day commitment obtained from his lender. Eginton agreed and the purchase agreement was amended, but the date of possession was not changed.

Eginton wanted a right of first refusal, allowing him an opportunity to meet any offer the Sullivans might receive if they were to sell the house. At some point the parties began what proved to be extensive negotiations on this subject. According to Sullivan, they also discussed a move-in move-out agreement.

The Sullivans lived in a townhouse which they had difficulty selling and finally decided to rent out. They signed a lease on the townhouse which began October 1.

The October 7 closing was acrimonious. The Sullivans refused to sign a right of

pointment pursuant to Minn. Const. art. 6, § 2.

first refusal. The Egintons walked out with their attorney three times to discuss their options, but did sign a warranty deed conveying the property. They told the Sullivans they were using the house to meet with clients, were not moved out, and would not surrender possession until November 1.

That night, Sullivan went to the house with a locksmith to gain entrance. Eginton, who had been at a neighbor's, came over and blocked the locksmith from the door. Police were called and they denied Sullivan access to the house.

On October 10, Sullivan obtained a temporary restraining order requiring Eginton to deliver possession, remove his possessions, and refrain from "trespassing" on the property. Sullivan went to the house with another locksmith. The Egintons and their attorney arrived soon after. The Egintons, shown the court order, turned a key over to Sullivan, but did not tell him he could not get in because Eginton had barricaded the doors from the inside.

Sullivan gained entrance that evening by breaking in a glass door pane. He did not move his furniture and other property in because the house was still largely occupied by Eginton's property.

On October 14, Eginton sought a writ of prohibition from this court and obtained an order allowing him to enter the property to remove his possessions. The temporary restraining order was in all other respects affirmed. The Egintons moved out the same day.

Eginton's mover noticed a crack in an antique clock and refused to move it. Eginton claims a pre-existing minor crack was expanded to 10 to 11 inches while Sullivan was in the house and he sought damages for this loss.

The trial court concluded that the purchase agreement merged into the deed, giving the Sullivans a right of possession as of October 7. The court assessed damages for the seven days' delay, until the Egintons moved out. Damages were allowed for the Sullivans' lost rent on their townhouse and for the per diem interest on their loan, as well as minor items. The court denied the Egintons' counterclaims and granted the Sullivans a permanent injunction restraining Eginton from entering the property or communicating with them.

## ISSUES

1. Did the trial court err in concluding that as to the date of possession the purchase agreement merged into the deed?

2. Did the trial court abuse its discretion in ordering a permanent injunction?

3. Did the trial court err in assessing damages?

## ANALYSIS

### 1. *Merger*

■ The Egintons concede that under the doctrine of merger the deed is generally presumed to express the final agreement of the parties. *See, e.g., Hubachek v. Brown*, 126 Minn. 359, 148 N.W. 121 (1914). The doctrine of merger does not apply where there is fraud or mistake. *McCarthy's St. Louis Park Cafe, Inc. v. Minneapolis Baseball and Athletic Association*, 258 Minn. 447, 454, 104 N.W.2d 895, 901 (1960).

The parties amended the purchase agreement to move the closing up to October 7, but left the date of possession at "not later than November 1." The date of possession is not an express term of the warranty deed, but

> [d]elivery of possession is normally essential to the transfer of good title, and the purchaser may reject a title not accompanied by immediate possession unless there be an agreement to the contrary.

8A G.W. Thompson on Real Property § 4449 (1963 & Supp.1981).

■ A collateral agreement intended to be performed other than by delivery and acceptance of the deed does not merge into the deed. *See Worthey v. Holmes*, 249 Ga. 104, 105, 287 S.E.2d 9, 10 (1982) (home-construction agreement, part of "build-sale" contract, did not merge into the deed). A move-in move-out agreement would be collateral to the deed, but it was Eginton, the

vendor, who was required to obtain such an agreement in order to enjoy possession. *See generally Miles v. City of Oakdale*, 323 N.W.2d 51, 57 (Minn.1982) (warranty deed includes covenant of quiet enjoyment or possession).

■ There was no collateral agreement, no fraud or mistake, and as to the date of possession the purchase agreement merged into the deed. Respondents were entitled to possession on October 7, 1985.

### 2. *Injunctive relief*

The trial court enjoined Charles Eginton from entering on the property at 1808 Beechwood or "in any manner communicating with" the Sullivans. The court based the need for injunctive relief on the facts that Eginton had refused to surrender possession of the property, and barricaded the doors, requiring the Sullivans to obtain a temporary restraining order. The temporary restraining order was dissolved when the Egintons voluntarily stipulated they would stay off the property.

■ Injunctive relief should be awarded only in clear cases reasonably free from doubt and when necessary to prevent great and irreparable harm. *See North Central Public Service Co. v. Village of Circle Pines*, 302 Minn. 53, 60, 224 N.W.2d 741, 746 (1974). A permanent injunction is a proper remedy to restrain a continuous and repeatedly threatened trespass. *Theros v. Phillips*, 256 N.W.2d 852, 859 (Minn.1977).

■ The Sullivans have established a threatened harm of continued interference with their possession of the property, not only from Eginton's actions following the closing, but his possessive attitude towards his boyhood home, exemplified in his demands for a right of first refusal. The trial court was within its discretion in enjoining him from entering the property. *See id.* at 859.

■ While it may not have appeared so at the time, the court's injunction against Eginton's communicating with the Sullivans "in any manner" now appears overbroad and unnecessary. There is no evidence of verbal or physical harassment by

Eginton. The Sullivans have a right to privacy in their own home, but no right not to be addressed in public in a non-threatening manner. Minnesota does not recognize the tort of invasion of privacy, but even if it did, would not find tortious an approach or a communication made in a public place. *See House v. Sports Films & Talents, Inc.*, 351 N.W.2d 684, 685 (Minn.Ct.App.1984) (plaintiffs approached and filmed in public with their consent).

The injunction relative to communications is modified to enjoin communications by telephone or verbal communications at the Sullivans' home.

### 3. *Damages*

The trial court assessed damages for lost rental income on the Sullivans' townhouse and for interest payments on the mortgage loan.

■ While unfavorable interest rate differentials caused by the vendor may be a proper item of damages to the vendee, the interest payments themselves were not because the Sullivans had committed to pay them irrespective of the Egintons' delay in surrendering possession. *Cf. Apollo v. Reynolds*, 364 N.W.2d 422, 425 (Minn.Ct. App.1985) (difference in interest rates between scheduled closing date and actual closing date allowed as damages because delay in obtaining loan commitments was caused by vendors' actions).

In all other respects the trial court's award of damages appears proper.

■ The Egintons contend the principle of res ipsa loquitor applies to their counterclaim for damage to the clock. The trial court, however, had to determine the credibility of the witnesses as to the condition of the clock both before and after the Sullivans obtained possession of the house. This was a factual determination for the trial court.

### DECISION

The trial court did not err in concluding respondents were entitled to possession on closing. Injunctive relief is modified to

enjoin communications by telephone or verbal communications at respondents' home. The trial court did not err in assessing damages.

Affirmed as modified.